**Danny L. KEY, Plaintiff–Appellant,**

v.

**John J. CALLAHAN, Acting Commissioner of Social Security, Defendant–Appellee.**

**No. 96–5200.**

United States Court of Appeals, Sixth Circuit.

Submitted Jan. 27, 1997.

Decided Feb. 11, 1997.*

* This decision was originally issued as an "unpublished decision" filed on February 11, 1997.

271

Robert E. Francis (briefed), Francis Law Office, Cadiz, KY, for Plaintiff–Appellant.

James H. Barr, Asst. U.S. Attorney, Louisville, KY, Mack A. Davis, Michael S. Feinstein (briefed), Mary Ann Sloan, Holly A. Grimes, Social Security Administration Office of General Counsel, Atlanta, GA, for Defendant–Appellee.

Before: GUY, SUHRHEINRICH, and BATCHELDER, Circuit Judges.

RALPH B. GUY, Jr., Circuit Judge.

Claimant, Danny Key, appeals from a denial of social security disability benefits. An administrative law judge (ALJ) determined that as of December 31, 1988, when claimant's insured status expired, he was able to do his past relevant work as a truck driver or a grocery store owner/operator. The ALJ

also determined that "[w]hile the claimant had probable dyslexia with limited reading and writing skills, the objective medical evidence does not indicate the existence of a medically determinable psychological mental impairment."

On appeal, claimant argues that the Commissioner failed to follow the proper legal standards in evaluating claimant's application and the decision is not supported by substantial evidence.

Our review of the record convinces us that the Commissioner's decision should be affirmed.

## I.

On May 28, 1992, claimant filed an application seeking disability insurance benefits. The claimant, whose insured status expired on December 31, 1988, claimed a disability onset date of December 31, 1986. Claimant has not engaged in substantial gainful employment since December 31, 1986. In his initial application for benefits, claimant asserted he was disabled due to back, neck, leg, and foot pain, as well as a breathing impairment. He subsequently amended his application to allege disability due to a mental impairment. Claimant, who was 42 years of age at the time his insured status expired, has an eighth-grade education, and his last previous relevant employment was as a truck driver and a grocery store owner/operator.

After claimant's initial application for benefits was denied, a hearing was held before an ALJ on March 11, 1993, which resulted in a denial of benefits. The ALJ determined:

3. ... [T]he Claimant had severe hypertension, abdominal complaints, obesity, and dyslexia, with limited reading and writing skills, but he did not have an impairment or combination of impairments listed in, or medically equal to one listed in, Appendix 1, Subpart P, Regulations No. 4.

4. The Claimant's allegations of pain and limitation on or before his date last insured, December 31, 1988, are not fully credible in light of the objective medical evidence and other evidence, including the observations of treating physicians, and the claimant's reported activities.

5. On or before the claimant's date last insured, December 31, 1988, the claimant had the residual functional capacity to perform medium work activity on a sustained basis, with the ability to lift 50 pounds occasionally and 25 pounds frequently, and stand and/or walk approximately 6 hours out of an 8 hour workday. While the claimant had probable dyslexia with limited reading and writing skills, the objective medical evidence does not indicate the existence of a medically determinable psychological mental impairment.

6. On or before the claimant's date last insured, December 31, 1988, the claimant's past relevant work as a truck driver and as a grocery store owner/operator did not require the performance of work-related activities precluded by the above limitations (20 CFR 404.1565).

7. On or before the claimant's date last insured, December 31, 1988, the claimant's impairments did not prevent the claimant from performing his past relevant work.

Key was not present at the hearing before the ALJ. He waived his right to be present through an attorney representing him at the hearing. The only testimony that was offered on behalf of claimant at the administrative hearing came from a psychologist, Jackalyn Weatherford. Key's file, however, contained a variety of medical reports covering treatment he had received going back to 1983 from different doctors and clinics for physical ailments. After the hearing, Key's recent medical records were transmitted to the ALJ by his attorney on May 4, 1993.

After benefits were denied by the ALJ, claimant instituted this action. The district judge referred this matter to a magistrate judge, who prepared a detailed report and recommended denying benefits. The district court, after considering objections filed by claimant, adopted the magistrate judge's recommendation and granted judgment in favor of the Commissioner. This appeal followed.

## II.

The magistrate judge's report contained the claimant's medical history in detail, and nothing would be served by setting it forth again in this opinion. In general, the claimant, who suffered from exogenous obesity and hypertension also had back and stomach problems. In 1983 the claimant had surgery for an inflammatory mass in the cecum, and in 1986 had his gall bladder removed. The records for 1986 and 1987 are unremarkable, and there is no record of any medical treatment obtained by the claimant during 1989. Although claimant made several visits to clinics in 1990, again, the record is unremarkable except that on December 13, 1990, he complained that his back pain had increased "markedly and severely." Because of claimant's complaint of pain in his extremities, an MRI was performed on December 31, 1990. The MRI findings were normal as to the cervical spine, but indicated a central disc protrusion at T12–L1, which was noted to be of doubtful clinical significance. No work-related limitations were noted in this report, nor were any of claimant's medical records that preceded this date. Records for 1991 and 1992 indicate occasional visits to doctors with complaints of back pain and shortness of breath.

The first time the claimant sought mental health counselling was on June 23, 1992, approximately one month after he had filed a claim for disability benefits. Beginning on November 16, 1992, claimant was treated by psychologist Jackalyn Weatherford. Dr. Weatherford provided the only medical testimony in support of Key's claim for disability benefits. Through a battery of tests that she administered, Dr. Weatherford concluded that claimant demonstrated reading skills at the end of the third-grade level, and spelling skills below the third-grade level. Based upon claimant's IQ profile and other tests administered, Dr. Weatherford believed the claimant had dyslexia. On March 11, 1993, Dr. Weatherford reported in her notes that claimant had a rather severe phobia regarding storms. This conclusion, plus the additional conclusion that this is what caused him to be fired from his job as a truck driver, were based solely upon statements made to Dr. Weatherford by the claimant. Dr. Weatherford also speculated that claimant's panic disorder may have been the cause of his failure in the grocery business.

At the hearing before the ALJ, Dr. Weatherford opined that she did not believe the claimant could have worked in 1988. She conceded, however, that this opinion was based entirely upon the claimant's subjective statements regarding his symptoms, rather than non-objective clinical evidence or personal knowledge.

## III.

 Our review is limited to determining whether the findings of the Commissioner are supported by substantial evidence, *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir.1990), and whether the correct legal standards were applied. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir.1990). The decision of an ALJ is not subject to reversal, even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ. *Crum*, 921 F.2d at 644.

Although Key has claims of both physical and mental impairments, it is clear that on appeal he only challenges the ALJ's determination relative to Key's mental impairments. Therefore, we limit our discussion to what the record shows relative to these impairments.

 As stated earlier, the only support in the record of Key's claim of disability as a result of a mental impairment is the testimony of Dr. Weatherford and the medical records that were generated as a result of Key's visits to Dr. Weatherford. Although arguably Dr. Weatherford's testimony and records would support a conclusion that claimant is disabled as of today, they will not support a finding that he was disabled as of the date of the expiration of his insured status on December 31, 1988. Dr. Weatherford candidly admitted that her opinion as to Key's condition in 1988 is predicated entirely upon what he told her about how he felt and what caused his employment problems. Counterbalanced against this testimony is

Key's extensive medical records as they relate to his physical complaints. It is apparent that Key did not hesitate to seek medical assistance when he felt the need. Therefore it is significant that he sought no medical assistance for any mental impairment until 1992, and that all of the records of his treatments for physical ailments prior to 1992 are silent as to any complaints of mental or emotional problems.

■ Since the onset date of claimant's alleged mental impairment is significant, he argues that the ALJ erred in failing to follow the mandates of Social Security Ruling 83–20, which pertains to onset of disability. S.S.R. 83–20 (Cum.Ed.1983–1991). The Commissioner responds to this argument by asserting that SSR 83–20 is not applicable to this case, since this policy statement applies only when there has been a finding of disability and it is necessary to determine when the disability began. We agree. Since there was no finding that the claimant is disabled as a result of his mental impairment or any other impairments or combination thereof, no inquiry into onset date is required. The only necessary inquiry is whether the claimant was disabled prior to the expiration of his insured status, and we agree that the ALJ correctly determined he was not.

Key also argues that the ALJ was required to obtain the services of a psychiatrist or a psychologist to properly evaluate Key's allegations of a mental impairment. 42 U.S.C. § 421(h). Claimant's reliance on § 421(h) is misplaced. This section makes it incumbent to make every reasonable effort to have a qualified psychiatrist or psychologist review the evidence if a state agency determines that a claimant is disabled as a result of a mental impairment. Here, the Psychiatric Review Technique Form was completed by the ALJ, and there is no requirement that a psychologist or psychiatrist complete this form or assist the ALJ in completing the form. The regulations clearly provide that the ALJ may complete the form without the assistance of a medical advisor. 20 C.F.R. § 404.1520a(d)(1)(i) (1996).

■ Finally, claimant argues that the ALJ was required to obtain the testimony of a vocational expert before reaching the conclusion that the claimant retained the residual functional capacity to do his past relevant work as a truck driver or grocery store operator. We disagree. Claimant has the ultimate burden of proving the existence of a disability. *Richardson v. Heckler,* 750 F.2d 506, 509 (6th Cir.1984). Only when the claimant has established that he can no longer perform his past relevant work does the burden shift to the Commissioner to establish that the claimant retains the residual functional capacity to perform other substantial gainful activity existing in the national economy. *Allen v. Califano,* 613 F.2d 139, 145 (6th Cir.1980). In evaluating residual functional capacity, the Commissioner may, but is not required to, use the services of a vocational expert. *Varley v. Secretary of Health & Human Servs.,* 820 F.2d 777, 779 (6th Cir.1987). Since in this case the evidence was such that the burden never shifted to the Commissioner to go forward with the evidence, the ALJ did not err in determining that the testimony of a vocational expert was not necessary. Further, relevant to residual functional capacity, claimant argues that his work as a grocery store operator should not be considered vocationally relevant, since he was not financially successful in this venture. Under the applicable Social Security regulations, however, whether a business venture is successful or not is immaterial to the question of whether it constitutes vocationally relevant former work. 20 C.F.R. § 404.1572(b) (1996) (gainful work activity is work done for pay or profit regardless of whether profit is realized). Even if we were to determine that a more searching inquiry should have been made by the ALJ into the nature of claimant's work as a grocery store operator, this would not affect the ALJ's decision that claimant could do his past relevant work as a truck driver.

**AFFIRMED.**