**Ivan SPICER, Plaintiff–Appellant,**

v.

**Kenneth S. APFEL, Commissioner
of Social Security, Defendant–
Appellee.**

**No. 00–5687.**

United States Court of Appeals,
Sixth Circuit.

July 16, 2001.

228

Before SILER and GILMAN, Circuit Judges; DONALD, District Judge.*

OPINION

GILMAN, Circuit Judge.

Ivan Spicer applied for and was denied disability insurance benefits under Title II of the Social Security Act. The district court affirmed the adverse decision by the Administrative Law Judge (ALJ). Spicer appeals that ruling, claiming that the ALJ erred in his substantive evaluation of Spicer's application for benefits. For the reasons set forth below, we AFFIRM the judgment of the district court.

I. BACKGROUND

A. Factual background

Ivan Spicer was born on August 22, 1951. He lives at home with his wife in Kentucky. Spicer completed high school and two years of college, obtaining an As-

---

* The Honorable Bernice B. Donald, United States District Judge for the Western District of Tennessee, sitting by designation.

sociate Degree in criminal justice. From March of 1970 to March of 1990, Spicer worked for the United States Air Force, where he was a security officer and performed general office work. Spicer's duties at the Air Force did not require any manual labor. As of May of 1990, Spicer worked as a glue machine operator at Osram Sylvania Lamp Products. This job required him to stand most of the day and involved a medium degree of exertion, including lifting boxes that weighed approximately 20 pounds.

Spicer stopped working for Osram Sylvania in May of 1994, three months after he sustained a work-related back injury. The injury occurred when he felt a pull in his lower back while picking up a pallet of cardboard on February 4, 1994. Dr. Phil Hylton performed a lumbar laminectomy/discectomy on Spicer in June of 1994. After a period of hospitalization, Spicer was discharged. He began to develop pain in his right leg several weeks later. In July of 1994, Spicer was again hospitalized, this time for deep venous thrombosis in his right leg. He was released after receiving medical treatment for the thrombosis.

Spicer's medical history from the time of his work-related injury in February of 1994 constitutes the focal point of his appeal from the denial of Social Security benefits. The record reveals that Spicer complains of physical pains in his legs and lower back. He testified that he cannot bend from the waist, that he experiences swelling in his legs, and that he is in constant need of medications and occasional epidural steroid injections to relieve his pain. In addition, he smokes a pack of cigarettes every day and suffers from obesity.

Several medical professionals have treated Spicer and evaluated his ability to return to work. Spicer's primary physician is Dr. Hylton, who performed the surgery and ordered hospitalization for Spicer's lower back pain and deep venous thrombosis in 1994. Dr. Hylton has continued to see Spicer for follow-up visits. In November of 1994, Dr. Hylton noted that Spicer could return to work. He recommended that Spicer do so by starting at only four hours a day and gradually progressing to eight hours a day, but with no bending, stooping, or lifting of over 50 pounds. Spicer, however, did not return to work. Dr. Hylton examined Spicer again in June and July of 1995, concluding that Spicer could perform sedentary work with a limited range of light-level exertion.

His evaluation of Spicer's condition changed dramatically on February 1, 1996. On that date, Dr. Hylton noted that because Spicer was experiencing severe swelling in his legs and chronic venous ulceration, Spicer could not return to work. In the words of Dr. Hylton:

> [Spicer] would in theory be able to participate in sedentary activities only, however, because of his chronic venous ulceration, maintaining fixed position in a chair would be detrimental and he would need to be allowed to change positions approximately every hour for short periods to move about and may need accommodation such that he can elevate his lower extremities because of the poorly controlled venous stasis edema.
>
> . . . .
>
> ... In my estimation unless the specific requirements noted could be met which seems to be very unlikely, this patient is permanently and totally disabled with regard to regaining reasonable gainful employment.

Dr. Hylton, however, had retreated from this pessimistic assessment of Spicer's ability to work by February 27, 1996. His opinion at that time was as follows:

In my estimation [Spicer] is capable only of sedentary activity and duties which would primarily be of a clerical nature. He needs to be allowed to change position every hour for a short break, approximately five minutes, to change position and to allow him to walk about to assist in musculature compression for venous return from the lower extremities. He should also avoid repeated activities which require bending, stooping, or twisting.

Two other doctors examined Spicer in 1996. The first was Dr. Kenneth Graulich, who reviewed Spicer's history of back and circulation problems, particularly in his right leg. He concluded that Spicer was capable of performing "medium labor." Dr. Graulich described that level of work

as not lifting more than 50 pounds occasionally, 25 pounds frequently, and not doing any excessive bending, stooping, kneeling, or crawling. In regards [to] restrictions for the thrombophlebitis they would be only slightly different. [Dr. Graulich] would advise against prolonged standing, sitting, kneeling, crawling. [Spicer] would need to alternate activities so that the leg is not left in one position at all times.

The other examining physician was Dr. A. Bert Sparrow. Dr. Sparrow confirmed Spicer's history of deep vein thrombophlebitis in his right leg. Although he recommended a further examination of Spicer's leg condition, he opined that Spicer "should be able to manage [the swelling] with support & leg elevation & an exercise program."

Dr. Hylton referred Spicer to the Pain Management Center at St. Joseph Hospital in Lexington, Kentucky to address the continuous pain that Spicer reported in his lower back and right leg. A physician at the Center, Dr. Charles Gagnon, examined Spicer there in September of 1996. He noted Spicer's limitations on leg movement due to the pain in Spicer's back and right leg. Dr. Gagnon ordered that Spicer receive a caudal epidural steroid injection to relieve his pain in October of 1996. He ordered further injections in January and April of 1997. After Dr. Gagnon left St. Joseph Hospital in 1997, Dr. Nileshkumar Patel assumed responsibility for Spicer's care at the Pain Management Center. Spicer reported to Dr. Patel in July of 1997 that his pain had intensified, which resulted in Spicer receiving another steroid injection.

Five months earlier, in February of 1997, neurologist Daniel J. Howley examined Spicer at the request of the Division of Disability Determinations. After reviewing Spicer's history, listening to Spicer's complaints, and conducting his own examination, Dr. Howley concluded:

This man has no objective evidence of a significant medical problem at this time. By this, I mean that he has normal strength in the legs and no sensory deficit. He can walk without significant difficulties. He has signs of some venous insufficiency, but there is no swelling, ulceration or tenderness of the calf. . . .

. . . .

Therefore we are left with a man who has limitations related to his sciatica . . . which is totally subjective based on his reports of pain. In that regard, it would be reasonable to say that he can't repetitively lift or repetitively bend. I would give him a 20 pound weight lifting limit and say that he shouldn't do a job with repetitive bending and that he might have difficulty with a job where he was on his feet continuously. However, once again this is all rather subjective and based on his reports of pain. My feeling is that it would be unfortunate if a 45–year old man is considered totally un-

able to work when there is little objective evidence of disease at this point. I would hope that there would be something he could do within these limitations and I think they could be relaxed somewhat if a job was otherwise acceptable.

Finally, the record contains evidence of Spicer's ability to perform daily tasks. He takes a shower when he gets up each morning, although he claims to have trouble bending to wash himself. Spicer can sit for approximately one hour before needing to move and can walk around for approximately one hour before needing to rest. Around the house, he helps his wife carry light grocery items, does occasional light yard work, and can mow his lawn with a riding mower over the course of two days. Furthermore, Spicer drives about four times a week for short distances around town.

## B. Procedural background

Spicer applied for and was denied disability insurance benefits on October 31, 1994, alleging a disability onset date of May 17, 1994. He did not appeal that decision. Spicer filed a second application for disability insurance benefits on July 10, 1996, alleging a disability onset date of June 1, 1994. That application is the subject of this appeal. After Spicer's application was denied at the initial and reconsideration stages, he requested a hearing on his claim. A hearing was held before an ALJ on September 10, 1997. Spicer testified at that hearing, providing his subjective account of the pain he experiences as a result of his medical condition.

The ALJ issued his decision denying Spicer's claim for disability benefits on October 7, 1997. In his decision, the ALJ outlined Spicer's medical ailments as venous disease of the right lower extremity, status post lumbar laminectomy, and obesity. The ALJ considered the medical opinions of Drs. Hylton, Graulich, Sparrow, Patel, and Howley in evaluating Spicer's residual functional capacity (RFC) to return to gainful employment. To that end, the ALJ decided that Spicer's twenty-year career as a security officer at the Air Force, a desk job, was his past relevant work. The ALJ concluded his decision with the following findings:

4. The testimony of claimant in regard to his physical complaints was not credible and is unsupported by the medical evidence. The testimony of claimant in regard to his subjective complaints was exaggerated.

5. The severity of claimant's impairments, including the exertional and nonexertional limitations, does not prevent performance of light exertional work. Claimant has past relevant work which, as normally performed, is within the light exertional level and therefore claimant is "not disabled."

6. Claimant['s] past work as a law enforcement security officer did not require the performance of work-related activities precluded by the above limitations.

Spicer sought review of the ALJ's decision from the Appeals Council. Once the Appeals Council denied Spicer's request, the ALJ's ruling became the final decision of the Commissioner on Spicer's application for benefits. On April 13, 1999, Spicer timely commenced a civil action in the United States District Court for the Eastern District of Kentucky for judicial review of the ALJ's decision denying him disability insurance benefits. The district court affirmed.

Spicer now appeals, setting forth two arguments in support of his claim that the ALJ erred in denying disability insurance benefits. First, Spicer contends that the ALJ improperly weighed the medical evi-

dence in concluding that Spicer retains the RFC to perform light-exertional office work. Second, he maintains that the ALJ's decision is not supported by substantial evidence, but rather is based on an improper credibility determination.

## II. ANALYSIS

### A. Standard of review

Under 42 U.S.C. § 405(g), the ALJ's findings are conclusive so long as they are supported by substantial evidence. Our review "is limited to determining whether there is substantial evidence in the record to support the findings." *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 851 (6th Cir.1986). " 'Substantial evidence' means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir.1981) (quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)). Furthermore, we must defer to an agency's decision "even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir.1997).

Our role is not to resolve conflicting evidence in the record or to examine the credibility of the claimant's testimony. *See Gaffney v. Bowen*, 825 F.2d 98, 100 (6th Cir.1987) (per curiam). Instead, we focus on whether substantial evidence supports the Commissioner's decision finding Spicer not disabled and therefore ineligible for disability insurance benefits.

### B. Legal framework for disability claims

A person is considered disabled under the Social Security Act "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Furthermore,

> an individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B). The burden lies with the claimant to prove that he is disabled. *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir.1993); *see also* 20 C.F.R. § 416.912(a).

The regulations outline a five-step analysis for evaluating disability claims. *See* 20 C.F.R. § 404.1520. Under the fourth step, the Commissioner determines whether a claimant is capable of performing past relevant work. This step provides as follows:

> If we cannot make a decision based on your current work activity or on medical facts alone, and you have a severe impairment(s), we then review your residual functional capacity and the physical and mental demands of the work you have done in the past. If you can still do this kind of work, we will find that you are not disabled.

20 C.F.R. § 404.1520(e). In Spicer's case, the ALJ terminated his analysis at this fourth step, concluding that Spicer retained the RFC to perform light exertional

office work like the type he did in the past while working as a law enforcement officer for the Air Force.

C. The ALJ did not improperly weigh the medical opinions of the various physicians

■ Spicer first argues that the ALJ relied too heavily on the medical evaluation of Dr. Howley, a one-time consulting physician, and did not properly take into consideration the opinions of Drs. Hylton and Patel, his two treating physicians. In Spicer's view, the medical opinions of these two doctors should have led the ALJ to conclude that Spicer suffers from severe back and leg pain and is therefore disabled.

According to the Social Security regulations, a treating source is a "medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you." 20 C.F.R. § 416.902. Dr. Hylton treated Spicer since his work-related injury in 1994, and therefore qualifies as a treating source. But the results of Dr. Hylton's examinations actually support the ALJ's conclusion that Spicer remains capable of performing light exertional work, particularly office work that involves sitting and that would permit him to take occasional breaks to ease the circulation in his legs.

■ Dr. Hylton's pronouncement on February 1, 1996 that Spicer "is permanently and totally disabled with regard to regaining reasonable gainful employment" was retracted in his subsequent evaluation on February 27, 1996. With regard to the earlier opinion, an "ALJ is not bound by conclusory statements of a treating physician that a claimant is disabled, but may reject determinations of such a physician when good reasons are identified for not accepting them." *Hall v. Bowen,* 837 F.2d

272, 276 (6th Cir.1988). One reason to disregard an opinion of the treating physician is if it is inconsistent with the weight of the evidence in the record about a claimant's physical condition. "Generally, the more consistent [a medical] opinion is with the record as a whole, the more weight we will give to that opinion." 20 C.F.R. § 416.927(d)(4). Dr. Hylton's conclusion on February 27, 1996 that Spicer is capable of performing sedentary work, provided that he is allowed to take a short break every hour, is more consistent with the record as a whole than his earlier opinion.

We do not find it necessary to decide whether Dr. Patel was also a treating source for Spicer, because we believe that his opinion likewise supports the ALJ's conclusion that Spicer retains the RFC to return to light exertional work. The ALJ in fact summarized Dr. Patel's evaluation of Spicer, which concluded that Spicer can lift no more than twenty pounds occasionally and ten pounds frequently, and can sit, stand, and walk for one hour each out of an eight hour work day. He also found that Dr. Patel's opinion was not inconsistent with that of Dr. Howley's, who concluded that Spicer was subject to lesser restrictions and retained the RFC to perform light exertional office work with some accommodations for easing the circulation in his legs.

In sum, we conclude that the ALJ properly weighed the various medical opinions in the record that are outlined above. At the fourth step of the disability analysis, the ALJ had to decide whether Spicer retained the RFC to perform the "kind of work" that he had performed in the past. *See* 20 C.F.R. § 404.1520(e). We are of the opinion that the ALJ's conclusion that Spicer could perform light-exertional office work, like the kind he performed as a desk security guard in the Air Force, is sup-

ported by substantial evidence in the record.

D. **Substantial evidence supports the Commissioner's credibility determination**

■ Spicer next argues that the ALJ erred in reaching his determination that Spicer's subjective accounts of pain were not credible. According to the Social Security regulations, when a claimant contends that he or she is impaired by subjective pain, the Commissioner is to consider several factors, including the intensity and persistence of a claimant's symptoms, objective medical evidence, and the claimant's daily activities. *See* 20 C.F.R. § 404.1529(c)(1). Spicer argues, however, that the ALJ failed to follow Social Security Regulation 96–7p, which directs the Commissioner to provide "specific reasons" for making a credibility determination.

We recognize that the ALJ's decision does not provide detailed reasons for his credibility determination, but conclude that this omission is harmless in light of the record before us. The transcript of Spicer's hearing reveals that Spicer had a sufficient opportunity to voice his subjective complaints. Furthermore, the record shows that the ALJ took into account Spicer's subjective complaints and the other factors outlined in the Social Security regulations. In the words of the ALJ:

> In view of the medical and other evidence of record in this case, including claimant's written and oral statements, the undersigned will assign to this individual a residual functional capacity for a light range of exertional activities, with further restrictions as shown in Dr. Howley's report. . . .

Faced with Spicer's subjective accounts of his pain on the one hand and the objective medical evidence on the other, we conclude that the ALJ was justified in determining that Spicer's complaints about his pain were exaggerated and not credible. Because it is not our role to second-guess the ALJ's factual determinations when there is substantial evidence to support them, we will not set aside the findings "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Key v. Callahan,* 109 F.3d 270, 273 (6th Cir.1997).

### III. CONCLUSION

For all of the reasons set forth above, we AFFIRM the judgment of the district court.