Mary RENFRO, Plaintiff–Appellant,

v.

Jo Anne B. BARNHART, Commissioner of Social Security, Defendant–Appellee.

No. 00–4457.

United States Court of Appeals, Sixth Circuit.

Feb. 19, 2002.

Before BOGGS and MOORE, Circuit Judges; RUSSELL,* District Judge.

## OPINION

MOORE, Circuit Judge.

Claimant–Appellant Mary Renfro appeals the decision of the district court affirming the Commissioner of Social Security's final determination denying her disability insurance benefits under the Social Security Act. Upon review of the record, we find that there is substantial evidence to support the Commissioner's determination and we therefore AFFIRM.

## I. BACKGROUND

Mary Renfro was born on September 20, 1943. She received a high school diploma through the General Equivalency Degree program, and her relevant work experience includes work as a truck driver, dietary aide, and kitchen attendant. On October 25, 1994, Renfro applied for a period of disability and disability insurance benefits, claiming that she had been disabled since April 30, 1990 from arthritis and severe pain in her feet, legs, and back. Renfro was insured for purposes of the Social Security Act through December 31, 1995. On December 29, 1994, her application was denied, and on April 24, 1995, her request for reconsideration was also denied. In her request for a hearing, Renfro presented new evidence of disability due to nerves and depression; the administrative law judge ("ALJ") therefore vacated the denial of Renfro's request for reconsideration and remanded her application for evaluation in light of the new evidence. On September 27, 1996, Renfro's request for reconsideration was again denied. Renfro submitted another request for an administrative hearing, and on August 18, 1997, ALJ Barbara Beran conducted a hearing. Renfro was represented by counsel at the hearing.

The ALJ considered Renfro's live testimony and the written reports of a number

---

* The Honorable Thomas B. Russell, United States District Judge for the Western District of Kentucky, sitting by designation.

of experts. These included a general practitioner that Renfro had been seeing prior to 1990, several physicians and a psychologist that Renfro consulted after 1990, and three physicians and a psychologist who examined or reviewed Renfro's medical records at the request of the state agency. Renfro testified that she suffered disabling pain in her left knee, ankle, foot, and shoulder, and her lower back, such that she cannot sit for more than thirty minutes, stand for more than fifteen or twenty minutes, bend or reach, or lift more than six or eight pounds. Renfro also testified that she suffered from "nerves and depression." The physicians' reports variously confirm that Renfro had long complained of ankle swelling and pain, that she had a tendon tear in her left foot, a growth of extra bone (a spur) on her left heel, degenerative changes in her left knee and hip, and that she was depressed. In addition, a vocational expert ("VE") testified as to the type of work available to a person with limitations described to him in a hypothetical posed by the ALJ.[1]

Based on the medical evidence, the ALJ found that "[t]he combined impairments of a partial posterior tibialis tendon tear, a calcaneal spur [in her left heel], depression since January 1, 1995, and mild degenerative changes in her left hip and knee are considered 'severe' within the specialized meaning of the Social Security Act because in combination they significantly interfere with the claimant's ability to engage in basic work activities." Administrative Record ("A.R.") at 24 (ALJ Op.). However-

er, the ALJ concluded that although Renfro's combined impairments were severe and prevented her from performing her relevant work prior to December 31, 1995, Renfro still had sufficient residual functional capacity "for less than a full range of 'light' work with additional exertional and non-exertional functional limitations." A.R. at 30. And based on the testimony of the VE, the ALJ also concluded that other work existed in the national economy that accommodated Renfro's residual functional capacity and vocational factors. Therefore, the ALJ issued a decision on October 7, 1997 denying Renfro's application for a period of disability and disability insurance benefits under the Social Security Act.

The ALJ's decision became the Commissioner's final decision on June 28, 1999 when the Social Security Administration Appeals Council denied Renfro's request for review. Renfro then sought judicial review of the final decision in the United States District Court for the Northern District of Ohio pursuant to 42 U.S.C. § 405(g). The matter was referred to a magistrate judge, who concluded in a report and recommendation of July 18, 2000 that substantial evidence supported the final decision. The district court agreed with and adopted the magistrate judge's report and recommendation and granted the Commissioner's motion for summary judgment. Renfro timely appeals.

## II. ANALYSIS

### A. Standard of Review

Our review of the Commissioner's final decision to deny Social Security disability

---

1. The ALJ asked the VE to assume a hypothetical person with an exertional residual functional capacity as described by one of the state agency doctors: such a person could occasionally lift up to fifty pounds, frequently lift up to twenty-five pounds, stand and/or walk with normal breaks for up to six hours a workday, sit with normal breaks for up to six hours a workday, and engage in unlimited

pushing and pulling. A.R. at 184 (Levine Report). In addition, the ALJ asked the VE to limit the hypothetical person to work that involves only simple tasks that are not fast-paced, that permits a sit/stand option, and that does not involve long distance walking or public contact. A.R. at 84–85 (Hearing Tr. at 41–42).

benefits is limited to determining whether the Commissioner applied the correct legal standard and whether he supported his decision with substantial evidence based on the record as a whole. *See* 42 U.S.C. § 405(g); *see also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir.1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (quotation omitted); *see also Walters*, 127 F.3d at 528. The Commissioner's decision is not subject to reversal simply because there is substantial evidence that would support the opposite conclusion. *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir.1997).

■ A person is entitled to disability insurance benefits under the Social Security Act if she (1) is insured for disability insurance benefits; (2) has not attained retirement age; (3) has filed an application for disability insurance benefits; and (4) is under a disability. *See* 42 U.S.C. § 423(a). If a claimant is no longer insured for disability insurance benefits at the time she files her application, she is entitled to disability insurance benefits only if she was disabled before the date she was last insured. *See id.; see also Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir.1990). The Act defines "disability" as "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To meet this definition, a claimant must have an impairment or impairments so severe that "he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in

any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). In evaluating whether a claimant is disabled, the ALJ must follow five steps:

1. If the claimant is doing substantial gainful activity, he is not disabled.

2. If the claimant is not doing substantial gainful activity, his impairment or impairments must be found to be severe before he can be found to be disabled.

3. If the claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, the claimant is presumed disabled without further inquiry.

4. If the claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if the claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

*See* 20 C.F.R. § 404.1520 (2001); *see also Buxton v. Halter*, 246 F.3d 762, 771–72 (6th Cir.2001). In this case, the Commissioner's denial of benefits was based on the ALJ's finding that Renfro was not disabled under the fifth step of the evaluation. The claimant has the burden of proving that she is disabled, but, at the fifth step of the evaluation, the burden shifts to the Commissioner to show that despite the claimant's impairment, the claimant retains "the residual functional capacity to perform other substantial gainful activity existing

in the national economy." *Key,* 109 F.3d at 274.

## B. Whether the ALJ's Decision was Supported by Substantial Evidence

### 1. Mental Residual Functional Capacity

■ On appeal, Renfro argues that the ALJ did not accurately evaluate her mental residual functional capacity. The ALJ found that Renfro was depressed prior to December 31, 1995, her date last insured, but the ALJ concluded that the depression just limited Renfro to "low stress work which involves only simple tasks that are not fast-paced and that do not require public contact or high levels of interaction with others." A.R. at 25 (ALJ Op.). Renfro claims that in this assessment the ALJ did not sufficiently take into account the mental residual functional capacity assessment performed by Donna Winter, Ph.D., at the request of the state agency. Renfro notes that Winter, a psychologist, found that Renfro is moderately limited in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms, to perform at a consistent pace without an unreasonable number and length of rest periods, and to accept instructions and respond appropriately to criticism from supervisors. Winter also concluded that Renfro would be "best limited to low demand, slow paced tasks." A.R. at 274 (Winter Report).[2] The ALJ recognized Winter's assessment, but as she determined that "[Winter's] conclusions are not supported by the medical evidence of record as a whole and they neglected to consider that the claimant's

date last insured was on December 31, 1995," she decided not to accept the assessment. A.R. at 27 (ALJ Op.).

We agree with the district court that there was substantial evidence supporting the ALJ's findings regarding Renfro's mental residual functional capacity. Under the regulations. ALJs "must consider findings of State agency medical and psychological consultants," but ALJs "are not bound by any findings made by State agency medical or psychological consultants." 20 C.F.R. § 404 .1527(f)(2)(i) (2001). In this case, the ALJ did not, as Renfro alleges, refuse to *consider* Winter's assessment of Renfro's mental residual functional capacity; the ALJ considered Winter's findings, but she stated that she found them to be unsupported by the medical evidence of record. We agree. There is simply no medical evidence in the record prior to December 31, 1995 that Renfro's depression affected her ability to work. In September of 1995, Renfro was diagnosed with depression by Vinkata Yerramilli, M.D., at which time Yerramilli prescribed an antidepressant. However, nothing in Yerramilli's report indicates that Renfro's depression limited her ability to work. Furthermore, after 1995, both Ralph Skillings, Ph.D., and James Feltis, M.D., with whom Renfro sought treatment, found that Renfro's depression did not affect her ability to work at all – although both psychologists agreed that Renfro had been depressed for a long time. Skillings in 1996 found that:

> [T]his woman does have depressive symptoms that have continued for some length of time. They are primarily reactive without significant interference

---

**2.** Although, semantically, "simple tasks that are not fast-paced" and "low demand, slow paced tasks" are not too different, the VE testified in regard to Winter's assessment that:

> I think that low demand and slow paced tasks are going to be extremely hard to find in a competitive work environment, and

that the very essence of competitive employment precludes an individual from a low demand, that that would be below what I would consider to be expected of, of an average employer, and thus, would eliminate competitive employment.

A.R. at 92 (VE Test.).

of her daily living. Concentration and memory were not impaired. She could relate to employment supervision or work peers in a regular and routine fashion psychologically. From observation she was believed to be able to manage any benefits in her own best interest.

A.R. at 271 (Skillings Report). And Feltis in 1997 found that Renfro's "depression remains constant and is of significance as far as her over-all well-being, but does not limit her ability to function." A.R. at 286 (Feltis Report). Winter's 1996 report, then, finding that Renfro's depression limited her to low demand, slow-paced tasks is not supported by the other medical evidence of record.

■ Renfro also argues on appeal that the ALJ's hypothetical question to the VE did not accurately reflect the extent of Renfro's mental impairment that the ALJ had already found to exist. We have held that in the fifth step of the disability analysis, the ALJ may rely on the testimony of a VE to establish the existence of other jobs in the economy that the claimant is capable of performing, as long as the testimony is "given in response to a hypothetical question that accurately describes the plaintiff in all significant, relevant respects." *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir.1994). The ALJ asked the VE to assume that the claimant was limited to jobs that involve simple tasks that are not fast-paced and that do not require public contact or high levels of interaction with others. Renfro claims that the ALJ should also have specified that the jobs be low stress and take into account Renfro's limitations regarding concentration, persistence, and pace. Renfro notes that the ALJ twice states in her opinion that Renfro is limited to low stress work, and that in the psychiatric review technique form, the ALJ checked "often" for the functional limitation of "Deficiencies of Concentration, Persistence or Pace Resulting in Fail-

ure to Complete Tasks in a Timely Manner." A.R. at 39 (PRT Form).

■ With regard to the alleged failure of the ALJ to specify in her hypothetical question to the VE that the available jobs be low stress, we conclude that the failure of the ALJ to use the words "low stress" in her hypothetical question is irrelevant. In both instances in her opinion in which the ALJ noted that Renfro was limited to low stress work, she stated the following: "she is limited to low stress work *which involves* only simple tasks that are not fast-paced and that do not require public contact or high levels of interaction with others." A.R. at 25, 31 (ALJ Op.) (emphasis added). Because the ALJ stipulated in her hypothetical question to the VE that the available jobs involve only simple tasks that are not fast-paced and that do not require public contact or high levels of interaction with others, she did effectively limit her hypothetical question to the VE to jobs that are low stress. With regard to the alleged failure of the ALJ to specify in her hypothetical question to the VE that the available jobs permit the functional limitation of oft occurring deficiencies of concentration, persistence and pace, we conclude that the ALJ did limit the hypothetical question as to pace and that she did not need to limit the hypothetical question as to concentration or persistence. Indeed, there is no evidence in the record that Renfro actually suffered from such deficiencies. Even Winter noted that Renfro's ability to maintain attention and concentration for extended periods was only moderately limited. Thus, we conclude that the hypothetical question the ALJ posed to the VE accurately described Renfro in all significant and relevant respects.

2. Physical Residual Functional Capacity

The ALJ found that in 1995 Renfro was able to do "light" work, with the additional

exertional limitations that she was only able to lift twenty pounds occasionally and ten pounds frequently, that she was unable to climb ladders, ropes, or scaffolds or walk for more than ten minutes at a time, and that her job must have a sit/stand option. On appeal, Renfro claims that this assessment does not sufficiently take into account the report of her treating physician, James Feltis, M.D., and the report of one of the state agency's examining physicians, Olayinka Aina, M.D. Feltis reported in 1997 that Renfro was unable, in an eight-hour workday, to stand for more than two hours, walk for more than one hour, sit for more than one hour, stand, walk or sit without interruption for more than half an hour, and lift anything at all. Aina reported in March of 1995 that "[b]ased on my objective findings, and because of the severity of her pain. I would preclude [Renfro] from lifting, pulling and pushing." A.R. at 170 (Aina Report). The ALJ noted in regard to Feltis's report that Feltis had not seen Renfro prior to her date last insured, and the ALJ noted in regard to Aina's conclusion that Renfro could not lift, pull or push that "[t]his opinion regarding the claimant's residual functional capacity is not accepted by the undersigned, as it was based on the claimant's exaggerated complaints of pain and was clearly not supported by Dr. Aina's objective findings as discussed above." A.R. at 27 (ALJ Op.).

█ We agree with the district court that there was substantial evidence supporting the ALJ's findings regarding Renfro's physical residual functional capacity. With respect to the ALJ's discounting of Feltis's opinion of Renfro's physical residual functional capacity, we conclude that Feltis's opinion was not entitled to controlling weight and that the ALJ could properly have found that it was outweighed by other substantial evidence. We have held that "[i]n general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters*, 127 F.3d at 529–30. And if the ALJ finds that the treating physician's "opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case," the ALJ will give the opinion controlling weight. 20 C.F.R. § 1527(d)(2) (2001); *see also Walters*, 127 F.3d at 530. However, as the ALJ noted, Feltis was only Renfro's treating physician *after* her date last insured. Renfro was treated from 1986 to 1994 by Robert Williams, M.D., and from 1994 to 1995 by Vinkata Yerramilli, M.D. Williams treated Renfro only for ankle pain and swelling. And although Yerramilli found Renfro to suffer from osteoarthritis and depression. Yerramilli did not find Renfro to be functionally limited. Thus, the reports of Renfro's treating physicians *before* December 31, 1995 do not indicate that she was as functionally limited then as Feltis found her in 1997.

Furthermore, even if we interpreted Feltis's opinion of Renfro's physical residual functional capacity to apply to Renfro prior to December 31, 1995, it would still be inconsistent with other substantial evidence. Other than Williams and Yerramilli, whose pre–1996 reports are described above, prior to December 31, 1995 Renfro also sought treatment from Anthony Volpe, M.D., an orthopedic surgeon, Paul Cwikla, D.P.M., a podiatrist, and Deborah Michaels, M.D. Cwikla and Volpe diagnosed Renfro with a tendon tear in her left foot, and Michaels found that x-rays of Renfro's hips and knees showed mild degenerative changes. The state agency had Renfro examined in 1995 by Olayinka Aina, M.D., who found Renfro to suffer from a spur in her heel and arthritis in her lower back. In addition, the state agency

had Renfro's medical record reviewed by Larry Levine, M.D., who concluded in 1994 that Renfro was capable of occasionally lifting up to fifty pounds, frequently lifting up to twenty-five pounds, standing or walking for up to six hours a workday, sitting for about six hours a workday, and engaging in unlimited pushing and pulling. Levine's assessment of Renfro's physical residual functional capacity was affirmed by a second state agency reviewer, Myung Cho, M.D., in 1995. Thus, we do not believe that the ALJ improperly refused to accept Feltis's opinion of Renfro's physical residual functional capacity.

■ In regard to Aina's opinion that Renfro could not lift, pull, or push, we conclude that the ALJ could properly have found that it was outweighed by other substantial evidence. Aina himself concluded that Renfro was impaired only by a "severe heel spur and arthritis in her back .... a rupture of the left tendon ... [and] some slight limitation in the left ankle." A.R. at 170 (Aina Report). These objective medical findings are supported by the findings of the other physicians who treated or examined Renfro, but, in the opinion of the other physicians, these conditions did not preclude Renfro from lifting, pulling, or pushing. In fact, in the opinion of Levine and Cho, Renfro could in 1995 lift up to fifty pounds occasionally, up to twenty-five pounds frequently, and was unlimited in her ability to push·and pull. However, in his report, Aina also noted that he based his conclusion in part on "the severity of [Renfro's] pain." A.R. at 170. It would be reasonable to infer, then, that Aina's opinion of the effect of Renfro's impairments differed from the opinions of other physicians because he took into account Renfro's subjective assessment of her pain. Because it would have been reasonable for the ALJ to infer that Aina's conclusion regarding Renfro's ability to lift, push and pull was based on Renfro's complaints· of pain, we conclude that the

ALJ could properly have refused to accept Aina's conclusion on the basis of the ALJ's finding that Renfro's testimony regarding her pain was "not fully credible." A.R. at 29 (ALJ Op.).

■ We have held that "[i]n evaluating complaints of pain, an ALJ may properly consider the credibility of the claimant." *Walters,* 127 F.3d at 531. "Furthermore, an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Id.* But an ALJ's assessment of a claimant's credibility must also be supported by substantial evidence. *Id.* In this case, the ALJ's finding that Renfro's testimony regarding her pain was not fully credible is supported by substantial evidence. This court has developed a two-prong test for evaluating claimants' assertions of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Felisky v. Bowen,* 35 F.3d 1027, 1038–39 (6th Cir.1994); *see also* 20 C.F.R. § 404.1529(a) (2001). In the reports of the physicians who treated or examined her before December 31, 1995, the objective medical evidence – of osteoarthritis, a torn tendon, a heel spur, and mild degenerative changes in her hips and knees – neither confirms Renfro's testimony of disabling pain nor establishes a medical condition of such severity that it could be reasonably expected to produce the disabling pain Renfro alleged. And as the ALJ noted,

Renfro also testified that she engaged in activities – such as cooking meals, washing dishes, vacuuming occasionally, dusting, eating out, visiting friends, and playing cards – that are inconsistent with pain so severe as to preclude her from lifting, pushing and pulling altogether. In sum, the ALJ's finding that Renfro's testimony regarding her pain was not fully credible is supported by substantial evidence, and the ALJ therefore properly considered Renfro's lack of credibility as evidence that weighed against Aina's opinion regarding Renfro's ability to lift, push and pull.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the decision of the district court upholding the Commissioner's decision to deny disability benefits to Renfro.