NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0656n.06

No. 12-2454

**FILED**
Jul 17, 2013
DEBORAH S. HUNT, Clerk

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

JAMES D. WATTERS,

  Plaintiff-Appellant,

v.

COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,

  Defendant-Appellee.

)
)
)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MICHIGAN

Before: SILER, CLAY, and GIBBONS, Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge.** James Watters appeals the district court's judgment affirming the Commissioner's denial of Social Security disability insurance benefits. Watters does not dispute the fact that he failed to present any medical records that were produced during the time period during which he asserts that he was entitled to disability insurance benefits. However, he argues that the medical evidence that he did provide is sufficient to demonstrate that his medical conditions were chronic and developed during the relevant time period. He also argues that his hearing was not "full and fair" and deprived him of due process. Because Watters failed to meet his burden at step two of the sequential evaluation process of demonstrating that he suffered from a severe impairment, and because Watters was not denied due process, we **AFFIRM** the judgment of the district court.

-1-

**I.**

This court reviews *de novo* a district court's decision regarding Social Security disability benefits. *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013). That review, however, is limited to a determination of "whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) (quoting *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001) (internal quotation marks omitted). We will affirm the Commissioner's decision if supported by substantial evidence, even if substantial evidence would also have supported the opposite conclusion. *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

The Commissioner follows a five-step sequential evaluation process, described at 20 C.F.R. § 404.1520, to determine if a claimant is entitled to disability insurance benefits, which we have summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

No. 12-2454
*Watters v. Commissioner of Social Security*

*Gayheart*, 710 F.3d at 374–75 (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997)). Watters applied for disability insurance benefits on April 9, 2008, alleging a disability onset date of December 31, 2002. For purposes of determining Watters's eligibility for benefits, the relevant time period runs from his alleged onset date to his date last insured, here December 31, 2002, to December 31, 2007.

At step one of the sequential evaluation process, the ALJ concluded that Watters did not engage in substantial gainful activity during the relevant time period. At step two, he concluded that "there were no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment." Therefore, the ALJ concluded that Watters was not disabled and denied his application for benefits. Watters appealed this decision to the Appeals Council, which denied his request for review on September 28, 2010. On June 17, 2011, the Appeals Council vacated that denial and allowed Watters an extension of time "to gather more evidence or make additional arguments." Watters provided "medical records dated from 1978 through 1980 as well as a third party statement from a former coworker." The Appeals Council noted that this evidence was "insufficient to change the Administrative Law Judge's decision" and again denied his request for review. Watters then filed a complaint in the United States District Court for the Eastern District of Michigan, challenging the ALJ's denial of disability insurance benefits. The district court affirmed the Commissioner's determination. This timely appeal followed.

**II.**

Watters argues that although he failed to provide medical evidence from the relevant time period, the medical evidence that he did provide is sufficient to demonstrate that his medical

conditions were chronic and developed during the relevant time period. "Under the prevailing *de minimis* view, an impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988). Although the standard is *de minimis*, the plaintiff still bears the burden of demonstrating that he suffers from a medically determinable physical impairment—a burden that requires "medical signs and laboratory findings." SSR 96-4p, 1996 WL 374187, at *1. Here, the relevant time period, for purposes of determining Watters's eligibility for benefits, runs from December 31, 2002, to December 31, 2007. Watters concedes that "there are no medical records from 2002 through 2007." However, he asserts that his treating physician Dr. Michael Kopec's statement provides sufficient evidence that Watters's medical condition was chronic and present during the relevant period. The letter from Dr. Kopec, written in October 2009, states:

> This letter is written on behalf of Mr. James Watters. I was asked to estimate the onset of Mr. Watters' current state of disability.
>
> As you know, Mr. Watters was in a motor vehicle collision in 1976 that caused multiple injuries. According to Mr. Watters, the large majority of his current complaints stem from that event. Although his physical condition began to decline throughout the 1990s, Mr. Watters reports that his current level of disability began around the year 2000. Despite his limitations, he continued to work full time for two more years due to the need for a steady income. He stopped working full time in 2002. Mr. Watters states that he becomes easily fatigued and is not able to perform the functions that his work requires because of his chronic pain. He has pain when performing the tasks required of his profession, such as climbing stairs and ladders and lifting heavy items. Even lighter and more sedentary activity is difficult for Mr. Watters secondary to his pain complaints.
>
> Mr. Watters established care with me this past July. Unfortunately a large majority of his medical records previous to the current time were not available to me. Over the past few months, Mr. Watters has had multiple imaging studies performed. X-

rays of his lumbar spine revealed moderate-to-severe degenerative disc disease with severe joint space narrowing at one joint space. His follow-up MRI once again revealed degenerative disc disease in his lower spine as well as degenerative spinal stenosis at one vertebral level and possible disc impingement upon one of his nerve roots. X-rays of his knees show some mild osteoarthritic changes in his right knee and mild-to-moderate osteoarthritic changes in his left knee.

The findings on x-ray and MRI represent changes that are chronic in nature, and his imaging findings seem to correspond to his pain complaints and his clinical presentation. Although I cannot provide a definite date of disability at Mr. Watters' current level of limitation, I can reasonably conclude from objective imaging that Mr. Watters' pain complaints originate from processes that are chronic in nature. Therefore, it is reasonable that Mr. Watters' current state of physical limitation could have begun at the specified time that he reports.

The ALJ noted that Watters presented evidence of his motorcycle accident from 1976. He noted that, at the time, Watters was 19 years of age and suffered from abrasions, a swollen knee, a tibial fracture that was debrided and irrigated, right knee arthrocentesis, and a delayed union of the tibia on the left side. The next medical evidence addressed by the ALJ was Watters's ER record from 2008, in which he had a swollen ankle, but no fracture or deformity. Finally, the ALJ addressed Dr. Kopec's report from October 2009, in which the doctor evaluated the nature of Watters's condition and concluded that his X-ray and MRI images indicate a chronic condition and that it is reasonable to conclude that the back issues could have begun in 2000 as alleged by Watters. The ALJ indicated that "the claimant's failure to seek and follow a regular course of treatment is an indication of non-disability" and that "there is insufficient evidence to substantiate the existence of a medically determinable impairment prior to December 31, 2007, the date last insured."

Under the treating physician rule, the ALJ is required to give a treating source's opinion controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic

No. 12-2454
*Watters v. Commissioner of Social Security*

techniques and is not inconsistent with the other substantial evidence in [the] case record." 20

C.F.R. § 404.1527(c)(2). If the treating source's opinion is not given controlling weight, an ALJ is

required to consider "the length of the treatment relationship and the frequency of examination, the

nature and extent of the treatment relationship, supportability of the opinion, consistency of the

opinion with the record as a whole, and the specialization of the treating source" in determining what

weight to give the opinion. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). The

ALJ must "give good reasons" for the weight given to the treating source's opinion. 20 C.F.R.

§ 404.1527(c)(2). Failure to comply with this requirement, however, may be deemed harmless error

if "'(1) a treating source's opinion is so patently deficient that the Commissioner could not possibly

credit it; (2) if the Commissioner adopts the opinion of the treating source or makes findings

consistent with the opinion; or (3) where the Commissioner has met the goal of

§ 1527(d)(2) . . . even though [he] has not complied with the terms of the regulation.'" *Cole v.*

*Astrue*, 661 F.3d 931, 940 (6th Cir. 2011) (quoting *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543,

551 (6th Cir. 2010)).

The ALJ described Dr. Kopec's opinion letter by noting that:

> Dr. Kopee [sic] stated in a letter that it is reasonable to conclude that the back issues could have begun in 2002 as alleged by the claimant. He noted that MRI evidence from 2009 indicates degenerative disc disease in the lumbar spine suggestive of nerve root impingement. 2009 xrays of the knees show osteoarthritic changes in the bilateral knees. In an effort to help the claimant he states that the issues could have been present for many years. However, there is simply no medical evidence to support this conclusion. The claimant stopped working in 2002 because it involved activity that was becoming too strenuous for him. However, there are simply no medical records from 2002 to the end of 2007.

In this case, Dr. Kopec's opinion as it relates to the relevant period is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques." In fact, it is not supported by anything other than Dr. Kopec's inferred onset date of Watters's disability, which he bases entirely on his conclusion that Watters's condition is "chronic" and that it would be "reasonable" to conclude that his disability "could have begun at the specified time that he reports"—7 years prior to Dr. Kopec's evaluation.[1] The ALJ would have done well to have clearly articulated that Dr. Kopec's opinion was discounted due to (1) the limited length of the treatment relationship, (2) the fact that all of his medical examinations post-dated the relevant period by two to seven years, and (3) the fact that the opinion was not supported by any objective evidence from the relevant period. Nevertheless, Dr. Kopec's opinion was so "patently deficient" that the ALJ could not possibly have credited it. Therefore, his failure to explain his "good reasons" for not granting controlling weight to Dr. Kopec's opinion is properly viewed as harmless error.

Absent additional evidence and given the reduced weight given to Dr. Kopec's opinion, it is clear that Watters failed to meet his burden to establish the existence of a severe impairment at step two. This case presents facts similar to those evaluated in *Key v. Callahan*, 109 F.3d 270 (6th Cir. 1997). In that case, the ALJ determined that the claimant had not demonstrated that he suffered from a disabling mental impairment where the only support in the record for his claim was the testimony and medical records of a doctor with whom he began treatment one month after he filed

---

[1]We note that Dr. Kopec did rely on X-rays of Watters's lumbar spine and knees, as well as an MRI of his spine. However, these imaging studies were performed in 2009, substantially outside of the relevant time period.

a claim for disability benefits. *Key*, 109 F.3d at 273. The court noted that although the testimony and records may support a finding of disability "today, they will not support a finding that he was disabled as of the date of the expiration of his insured status." *Id.*

In *Key*, we explained that "it is significant that [the claimant] sought no medical assistance for any mental impairment until" his visits after filing for disability benefits. *Key*, 109 F.3d at 274. Similarly, here, the ALJ noted that "[t]he claimant's failure to seek and follow a regular course of treatment is an indication of non-disability." Watters argues that this conclusion is contrary to SSR 96-7p, which requires that "the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide." SSR 96-7p, 1996 WL 374186, at *7.

At the hearing, Watters testified that "I was going to the doctor, but my insurance was going to be cancelled, and I didn't go back to the doctor no more, until I found out I could get some insurance through the . . . County health plan here locally, so I could at least get to a doctor. That's why my records are so hit and miss." Later, he explained "I didn't go to doctors and owe a bill that I couldn't pay. I didn't know I could get health insurance through the county until recently." However, in this case, whether Watters failed to seek medical treatment for a legitimate or an illegitimate reason, the fact remains that Watters bears the burden of demonstrating that he suffers from a medically determinable physical impairment—a burden that requires "medical signs and laboratory findings demonstrating the existence of a medically determinable physical or mental

impairment." SSR 96-4p, 1996 WL 374187, at *1. This is a case in which the very existence of a disability is at issue. The ALJ did not consider Watters's failure to seek treatment as an indication that his symptoms or functional effects were less than he presented them to be, as prohibited absent further inquiry by SSR 96-7p. 1996 WL 374186, at *7. Rather, he recognized that Watters failed to meet his burden of establishing the existence of a disability, a burden for which the Commissioner requires "medical signs and laboratory findings."

**III.**

Watters also argues that he was denied due process when he did not receive a "full and fair" hearing before the ALJ. Watters did not raise his due process claim in his complaint and did not seek leave to amend his complaint to assert this claim. He first addressed due process in his motion for summary judgment. The Commissioner responded in her cross-motion for summary judgment. The magistrate judge, and the district court in its adoption of the report and recommendation, addressed the issue. Therefore, this issue has been tried by consent and the complaint has been constructively amended. Wright & Miller, 6A Fed. Practice & Procedure § 1493. The issue is thus properly before us.

An applicant for Social Security benefits has a Fifth Amendment property interest in those benefits. *Flatford v. Chater*, 93 F.3d 1296, 1304–05 (6th Cir. 1996); *see also Richardson v. Perales*, 402 U.S. 389, 401–02 (1971). Due process requires that a claimant's hearing be "fundamentally fair." *Perales*, 402 U.S. at 401–02. Evaluation of a due process claim requires consideration of three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an

erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Flatford*, 93 F.3d at 1306.

Watters argues that he was denied due process because his hearing lasted nine minutes and was transcribed in less than eight pages. He asserts that the ALJ "should have allowed [Watters] to testify in full . . . [and] should have obtained additional information from [Dr. Kopec] pursuant to 20 C.F.R. 404.1527." At the hearing, the ALJ noted the absence of objective medical evidence relevant to the time period for which Watters sought disability benefits. The ALJ adjourned the hearing to allow Watters to cure this deficiency, stating that "[y]ou need a medical opinion that says that prior to 2007, you had certain medical issues, and they were causing you to be not able to function. Your attorney knows how to address those issues, so I'm going to give you 30 days to visit with those doctors."

After the ALJ gave Watters an additional thirty days in which to submit a relevant medical opinion, Watters produced only the letter from Dr. Kopec and no medical records from the relevant time period. The ALJ was under no obligation to investigate Watters's case for him. The regulation cited by Watters provides that ALJs "may ask for and consider opinions from medical experts," but it does not impose a requirement on them to do so. Rather, this court has consistently affirmed that the claimant bears the burden of producing sufficient evidence to show the existence of a disability. *Harley v. Comm'r of Soc. Sec.*, 485 F. App'x 802, 803 (6th Cir. 2012) (citing *Her v. Comm'r of Soc.*

*Sec.*, 203 F.3d 388, 389 (6th Cir. 1999)). Although the interest at stake is undoubtedly great, the ALJ provided a reasonable opportunity for Watters to produce the evidence that could have supported his claim. The Appeals Council also provided him additional time to produce record evidence. Watters did not seek additional time to find relevant records on either occasion. Because a finding of disability required objective medical evidence that Watters failed to provide, Watters cannot articulate how additional process would have aided him in presenting his case.[2] There is no way to evaluate the burden to the government of any additional process sought by Watters, as no additional process could remedy the absence of medical records. As such, Watters cannot demonstrate that he received less process than he was due.

**IV.**

We affirm the judgment of the district court.

---

[2]In his brief, Watters argues that he and his lay witness should have been given the opportunity to testify fully. However, neither of these witnesses were capable of curing the fatal defect in Watters's case because they could not provide medical evidence from the relevant time period.