# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-3474

_____

Derone Combs,

        Plaintiff - Appellant,

v.

Michael J. Astrue,[1] Commissioner
of Social Security,

        Defendant - Appellee.

        Appeal from the United States
District Court for the Southern
District of Iowa.

[UNPUBLISHED]

_____

Submitted:  April 13, 2007
Filed: July 30, 2007

_____

Before LOKEN, Chief Judge, BYE and RILEY, Circuit Judges.

_____

PER CURIAM.

Derone Combs filed applications for disability insurance benefits and supplemental security income (SSI) benefits, which were denied by the Social Security Administration (SSA).  Combs sought review before two administrative law judges (ALJs), who each conducted a hearing; the second ruled Combs was not

_____

[1]Michael J. Astrue has been appointed to serve as Commissioner of Social Security and is substituted as appellee pursuant to Rule 43(c)(2) of the Federal Rules of Appellate Procedure.

entitled to benefits. The SSA Appeals Council denied review, rendering the ALJ's decision final. Combs sought review in district court,[2] which affirmed the decision of the agency. Combs appeals, and we affirm.

I

On July 24, 2000, Combs was burned by steam while working as a dishwasher. He was seen three times for physical therapy. After the burn healed, he continued to feel pain consistent with reflex sympathetic dystrophy[3] (RSD), so his physical therapist referred him to a physician.

Two medical reports from August 2000 state that although Combs's burn had healed, he continued to complain of sharp pain over the area of the burn, swelling and cold feelings in his hand and increased pain with changes in the ambient temperature. The doctor diagnosed possible RSD of the right upper extremity and tried several treatments. There is no record of his receiving medical care for his condition between this time and late 2003, when he was seen for forty minutes by a physician. He reported attacks of pain two to three times per week, during which his arm was swollen and extremely tender. On physical examination, no abnormalities were noted. The doctor was not able to verify his complaints of episodic pain, and recommended he be limited to lifting no more than twenty-five pounds. No other limitations were noted. He was seen by another doctor on December 23, 2003, requesting medication for RSD. He appeared uncomfortable on physical examination, and both arms were

---

[2] The Honorable Robert W. Pratt, Chief Judge, United States District Court for the Southern District of Iowa.

[3] RSD is a "series of changes caused by the sympathetic nervous system, marked by pallor or rubor, pain, sweating, edema, or osteoporosis, following muscle sprain, bone fracture, or injury to nerves or blood vessels." Dorland's Illustrated Medical Dictionary 560 (29th ed. 2000).

tender to the touch. His doctor prescribed Elavil (a prescription antidepressant) and ibuprofen. The doctor also recommended a referral to a pain clinic.

Combs was seen at a pain clinic on January 19, 2004. After an examination the doctor wrote there was no clear diagnosis: "I cannot certainly make a diagnosis of reflex sympathetic dystrophy or complex regional pain syndrome." The doctor noted a flat affect and possible depression. On April 21, 2004, he again saw the pain clinic doctor, who noted Combs's symptoms and signs were consistent with complex regional pain syndrome (type I) (another term for RSD) and depression.

Combs was seen for an intake evaluation at a community mental health center on March 16, 2004. He had no prior psychiatric care or counseling and referred himself to the center. He indicated being restless all night, was tired, and it became difficult for him to get up in the morning. His appetite declined and his energy level was low. He indicated his concentration and memory were poor. He was scheduled for individual therapy and for an appointment with a psychiatrist. On June 23, 2004, a doctor described him as still symptomatic with "major depressive disorder," with no additional detail, and prescribed Zoloft.

An undated medical source statement from an unidentified health-care provider was found in Combs's record. The statement reflects diagnoses of major depressive disorder and RSD, and a global assessment of functioning (GAF) of 60. This provider indicated he had a "medical issue that affects ability to work/function." He had "marked" limitations in completing a normal workday and working at a consistent pace. He had slight limitations in working with others "due to pain." He had "moderate" limitations in the ability to be aware of hazards.

Combs filed applications for benefits on October 2, 2003. After his applications were denied, he requested a hearing. He also appeared and testified before ALJ Thomas Gaye on August 12, 2004. When Judge Gaye learned Combs was claiming

a mental as well as a physical impairment, he adjourned the hearing and said a mental status examination would be ordered. Judge Gaye also recommended Combs obtain the services of an attorney.

Combs was hospitalized for depression August 13-15, 2004. As part of his application for Social Security benefits, Combs was seen for a functional capacity evaluation at the Genesis Valley Fair rehabilitation clinic in Davenport, Iowa, on August 16, 2004. During the evaluation, he was able to lift sixty-five pounds and showed no limitations in his ability to sit, stand, crawl, kneel, crouch, or squat. He displayed noted muscle definition in his arms without any apparent disuse atrophy. On a thirteen-point consistency checklist, part of the evaluation, Combs produced results inconsistent with his giving maximum effort on nine of the points, when just three inconsistencies are ordinarily enough to indicate overall the subject is providing non-maximum or inconsistent effort on the evaluation. He was scheduled to complete the evaluation on the 17th, but did not show up. It was noted he was uncooperative in complying with test requirements. His pain behaviors indicated to the tester that while pain may be present, his behavior was the greatest limitation. Based upon his performance during the portions of the evaluation he attended, the physical therapist described his limitations as self-imposed. Throughout the period of claimed disability, Combs was able to care for a small child, clean the house, and occasionally cut the lawn with a self-propelled mower.

Combs appeared on October 21, 2004, before ALJ John Sandbothe. He told the ALJ he had not been able to find an attorney to represent him, so the hearing proceeded pro se. The ALJ concluded Combs was not credible when he claimed his pain was so severe he could not work: "[C]laimant's allegations of disability are not consistent with the medical signs and findings or treating and examining physician reports and are therefore not credible, as the medical evidence of record demonstrates that his reflex sympathetic dystrophy is largely under control, as shown by treatment

notes showing only very occasional acute exacerbation of symptoms." The ALJ noted his RSD was controlled with medications and required only occasional treatment.

In his decision, the ALJ found Combs has the residual functional capacity (RFC)[4]

> to lift and carry ten pounds frequently and twenty pounds occasionally, and he can sit, stand and/or walk at least six hours of a work day. He can occasionally balance, stoop, crouch, kneel, crawl, and climb. Mentally and emotionally, due to low academic achievement, he is limited to simple, routine, repetitive work, and is limited to a regular work pace. He has no other significant limitations.

At the last step of the five-step sequential evaluation, the ALJ found Combs able to perform a significant number of light and sedentary jobs existing in the national economy. At the hearing, a vocational expert testified his limitations would allow for wide range of unskilled light and sedentary occupations.

Combs appealed. The district court upheld the decision, finding no fault with the ALJ's credibility finding. "Although the evidence in this case establishes the existence of impairments severe enough to advance the case beyond the second step of the sequential evaluation, the impairments are not severe enough to prevent the performance of all substantial gainful activity . . . . In this case, the ALJ found that Combs's pain limits him to the performance of light and sedentary work as defined in the regulations." The district court found the Commissioner's decision supported by substantial evidence on the record as a whole, and held the ALJ's findings to have

---

[4] The residual functional capacity is the most an individual can do despite the combined effect of all of their credible limitations. 20 C.F.R. §§ 404.1545, 416.945 (2006). The residual functional capacity is based on all of the relevant evidence in the case record, and is assessed at step four of the sequential evaluation. Id.

been "well within the zone of reasonable choices that this Court will not disturb." This appeal followed.

II

To establish entitlement to benefits, a claimant must show he is unable to engage in any substantial gainful activity by reason of a medically determinable impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). In Barnhart v. Walton, 535 U.S. 212, 215 (2002), the Supreme Court upheld the Social Security Commissioner's interpretation of this statutory definition, which requires the disability, and not only the impairment, to have existed or be expected to exist for twelve months.

We review de novo the decision of the district court affirming the agency's denial of benefits. Nicola v. Astrue, 480 F.3d 885, 886 (8th Cir. 2007). Our task is to determine whether the ALJ's findings are supported by substantial evidence on the record as a whole. Id. Substantial evidence is evidence a reasonable person would consider adequate to support the ALJ's conclusion. Id. If the record contains insufficient evidence to support the outcome, we will reverse the ALJ's decision, but we will not reverse merely because we may have reached a different conclusion. Id.

If, after reviewing the record, we find it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, we must affirm the decision of the Commissioner. Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000).

The evaluation of disability in a Social Security claim is a five-step process. SSR 86-8, 20 C.F.R. §§ 404.1520, 416.920. The claimant must show he is not engaging in substantial gainful activity and that he has a severe impairment. Those are steps one and two. Id. Consideration must then be given, at step three, to whether

the claimant meets or equals a listing.  Id.  Step four concerns whether the claimant can perform his past relevant work; if not, at step five, the ALJ determines whether jobs the claimant can perform exist in significant numbers.

Combs argues the ALJ failed to fully develop the record, erred in following set rules in the evaluation of RSD, and erred in his posing of a hypothetical to a vocational expert.  The ALJ did find he suffered from RSD and depression at step three; the dispute here centers on steps four and five: whether he suffers from them to a sufficient degree to keep him from working at most jobs.

*A. Developing the Record*

Combs argues the ALJ failed to develop the record as to his depression and physical limitations, a duty particularly important because he was appearing pro se.

But Combs bears a heavy burden in showing the record has been inadequately developed.  He must show both a failure to develop necessary evidence and unfairness or prejudice from that failure.  Haley v. Massanari, 258 F.3d 742, 749-750 (8th Cir. 2001) (holding "reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial"; ALJ may issue decision without obtaining additional evidence if existing evidence provides sufficient basis for decision (internal quotes and citations omitted)).

The Commissioner notes all of Combs's medical records – including those related to the small number of times he received psychiatric evaluation – were in the record, and treated as accurate.  The Commissioner argues his record is complete – as he has identified no missing documents – and asserts failure to show any prejudice from any missing records.

The Commissioner acknowledges the psychiatric examination requested by the first ALJ was not completed. But while the record of Combs's psychiatric history was thin when the exam was requested, the Commissioner argues it was subsequently supplemented with records from the community mental health center, and the second ALJ felt comfortable making his decision on that record. The ALJ is required to order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled. Barrett v. Shalala, 38 F.3d 1019, 1023 (8th Cir. 1994); 20 C.F.R. §§ 404.1519a(b) and 416.919a(b) (2006).

Combs argues the record is "replete" with references to his depression. The record does mention it several times, but described him as "sad" or with "flat affect." While the record may show he was depressed – and the ALJ did find he was – nowhere does the record indicate he is suffering from depression to the extent he cannot work. The mild treatments he was prescribed also argue against a finding of such severe depression.

*B. Following Set Rules in the Evaluation of RSD*

Combs argues Social Security Ruling (SSR) 03-2p requires ALJs to follow set procedures in evaluating RSD claims. But he does not identify anything in particular the ALJ did wrong under SSR 03-2p, other than proceed on the basis of a record he claims was inadequate. His objections also seem to imply the ALJ either did not find he suffered from RSD, or found his RSD was not severe. In fact, the ALJ *did* make those findings; he just did not find the evidence in the record sufficient to deem him unable to work. Once a diagnosis of RSD is found, the determination of whether someone is disabled is made the same way it is for any other condition, and the ALJ is fully authorized to make credibility determinations on the record before him.

Factoring into the ALJ's assessment of Combs's credibility was a) he reported no pain to a doctor in September 2000; b) he was not treated for the condition between September 2000 and November 2003; c) he did not cooperate with, nor complete, a functional capacity evaluation; and d) what he did complete of the functional capacity evaluation led the physical therapist to conclude he was exaggerating his symptoms.

Combs testified he only took non-prescription pain medications for the majority of the relevant period. The lack of strong prescription pain medication supports the ALJ's findings. Rankin v. Apfel, 195 F.3d 427, 430 (8th Cir. 1999). Over-the-counter medications are inconsistent with complaints of disabling pain. Loving v. Dep't. of Health & Human Serv., 16 F.3d 967, 971 (8th Cir. 1994). Moreover, when he did take the medications, his doctor noted they resolved his complaints of pain. Patrick v. Barnhart, 323 F.3d 592, 596 (8th Cir. 2003) (holding if an impairment can be controlled by treatment or medication, it cannot be considered disabling).

### C. The Posing of the Hypothetical

At the second hearing, the ALJ proposed a hypothetical to the vocational expert (VE): "If I have a person who is basically limited to lifting 20 pounds occasionally, 10 pounds frequently, and can only occasionally balance, stoop, crouch, kneel, crawl, or climb; simple, routine, repetitive work, no more than a regular pace, are there any jobs he'd be capable of doing?" "Yes, there are, in my opinion," the VE replied.

The VE testified Combs could perform almost all sedentary and light work. The limitation on simple, routine work would limit the numbers of jobs available, but a wide range of light and sedentary jobs would still be available.

The ALJ then asked a second hypothetical, adding that the person would require two or more absences per month and when he is working, would require a slower pace for a third of that day. The VE replied that in his opinion, that second person would

not be competitively employable. Based on this – and after finding Combs not fully credible as to the extent of his impairments – the ALJ found the first hypothetical best described his residual functional capacity.

Combs argues the ALJ erred when he posed his first hypothetical question to the VE, as it had no medical basis. This assertion is premised on the argument that the record was undeveloped, and ignores that the ALJ found some of his reporting of subjective symptoms to be not credible.

The Commissioner notes it is Combs's – and not the Commissioner's – burden to prove his RFC at step four of the sequential evaluation, and it is the ALJ's responsibility to determine the RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own description of his limitations. Young, 221 F.3d at 1069 n.5.

Having determined Combs's RFC, the ALJ found he did not have any past relevant work to which he could return. Therefore, at step five of the sequential evaluation process, the burden of production shifted to the Commissioner to demonstrate there was other work found in significant numbers in the national economy he could perform given his age, education, and residual functional capacity. Id. See also 20 C.F.R. §§ 404.1520(f); 416.920(f) (2006). The VE indicated to the ALJ that he could perform all but 10% of the sedentary jobs in the national economy, and the ALJ accepted that analysis.

III

The district court correctly upheld the Commissioner's decision in this matter. The ALJ did not fail to fully develop the record, and Combs did fail to show how he might have been prejudiced by any omission. The ALJ properly applied the rules in the evaluation of RSD. The ALJ's posing of a hypothetical to a vocational expert was

proper.  In the end, the ALJ's decision was supported by substantial evidence on the record as a whole, and its findings were within the "zone of reasonable choices" within its discretion.  We affirm.

_____