NOT RECOMMENDED FOR PUBLICATION
File Name: 17a0540n.06

No. 17-1237

**FILED**
Sep 26, 2017
DEBORAH S. HUNT, Clerk

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| MARGARET L. SHEPARD, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| COMMISSIONER OF SOCIAL SECURITY, | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF MICHIGAN |
| Defendant-Appellee. | ) | |
| | ) | |
| | ) | |

BEFORE:     MERRITT, MOORE, and ROGERS, Circuit Judges.

ROGERS, Circuit Judge.   Margaret Shepard appeals the district court's decision to uphold the final decision of the Commissioner of Social Security denying her claim for Disability Insurance Benefits under Title II of the Social Security Act. Shepard contends that the Commissioner failed to assess her claim in accordance with the relevant Social Security Rulings. However, substantial evidence demonstrates that the Commissioner's decision comported with all relevant rulings. Shepard also argues that the Commissioner failed to give proper weight to her testimony and the opinion of her treating physician. These claims also fail because there is substantial evidence to support the Commissioner's decision to discount the weight of this evidence.   Finally, Shepard contends that there is not substantial evidence to support the Commissioner's residual functional capacity determination.   However, there is substantial

evidence in the record to support the Commissioner's assessment. The district court, therefore, properly upheld the Commissioner's decision to deny Shepard's Social Security Disability claim.

Margaret Shepard was born in March 1959. She has a high school education, and past work experience as a mail carrier. Beginning in the early 2000's, Shepard sought treatment for bilateral carpal tunnel syndrome and reflex sympathetic dystrophy ("RSD"). At that time, Dr. Narin Tanir became Shepard's primary physician, treating Shepard's carpal tunnel and RSD as well as her other medical issues including obesity, depression, fatigue, and degenerative disc disease. Shepard continued to see Dr. Tanir for these various medical issues through June 28, 2014.

On July 14, 2010, Shepard filed an application for disability insurance benefits, alleging disability beginning on January 30, 2002 through June 30, 2007, her date last insured for benefits. The State agency responsible for reviewing her application denied Shepard's claim, and she requested a hearing before an ALJ. Following a hearing, the ALJ denied Shepard's claim, and the Appeals Council denied review. On judicial review, the district court determined that the ALJ's decision was not supported by substantial evidence and remanded the case to the Social Security Administration. *Shepard v. Colvin*, No. 12-CV-14386, 2013 WL 6062006, at *6 (E.D. Mich. Nov. 18, 2013).

In accordance with the district court's order, the Appeals Council vacated the Commissioner's decision and remanded the case for further proceedings. Shepard's second administrative hearing was held on October 9, 2014 before a different ALJ. At the hearing, both Shepard and a vocational expert testified. Shepard also amended her alleged disability onset date to June 1, 2007.

The ALJ's December 31, 2014 written opinion concluded that Shepard was not disabled from June 1, 2007, her amended alleged onset date, through June 30, 2007, her date last insured. The ALJ determined that Shepard retained the residual functional capacity ("RFC") to perform:

> light work as defined in 20 CFR 404.1567(b) with the following: She would require a sit/stand option, at will, and would not take her off task more than 10%. She could never climb ladders, ropes or scaffolds; occasionally climb ramps and stairs, stoop, kneel, crouch, crawl, and balance. She could occasionally handle, finger and feel bilaterally with upper extremities; would have to avoid exposure to hazards such as unprotected heights, moving mechanical parts, and operating motor vehicles. She can perform simple, routine tasks; no contact with the public; and only occasional changes in the work setting.

This conclusion was based on the ALJ's review of the medical reports, testimony, and opinion evidence in the record. During her review of the record, the ALJ determined that Shepard's statements concerning the limiting effects of her symptoms were "not entirely credible" and that an assessment by Dr. Tanir that Shepard was unable to perform "light" or "sedentary work" should be afforded "little weight." Finally, based on the ALJ's RFC findings and the vocational expert's testimony that Shepard could work as a machine tender, with 101,000 such positions existing in the national economy, the ALJ concluded that Shepard was capable of making a successful adjustment to work that exists in significant numbers in the national economy.

The Appeals Council denied Shepard's subsequent request for review, making the second ALJ's decision the Commissioner's final decision. Shepard again sought judicial review. This time, the district court upheld the Commissioner's decision.

The district court rejected Shepard's argument that the ALJ erred in determining Shepard's RFC. First, the court concluded that the ALJ in the remanded proceedings was not bound by the RFC from the initial administrative decision because "the only final decision by the Commissioner in this case is [the] December 31, 2014 decision," and the district court decision

remanding the case to the Commissioner "expressly directed the Commissioner to 'reconsider the RFC.'" *Shepard v. Comm'r of Soc. Sec.*, 2017 WL 104095, at *4 (W.D. Mich. Jan. 11, 2017). Moreover, the court observed that the Appeals Council's remand order and the decision of the prior district court make clear "that the prior ALJ got it wrong." Next, the district court determined that the substance of the ALJ's RFC was supported by substantial evidence. The court held that "[t]he ALJ provided a thorough and accurate discussion of the medical evidence," and cited medical reports that Shepard's pain was "relatively stable and was under 'satisfactory control' so long as she limited any repetitive activity." *Id.* at *5.

The district court also held that substantial evidence supported the ALJ's decision to discount Shepard's testimony and Dr. Tanir's opinion regarding Shepard's ability to work. *Id.* at *7–8. The district court concluded that the conservative nature of Shepard's treatment, the relatively effective of control of her symptoms with pain medication, and Shepard's daily activities all supported the ALJ's determination that Shepard's testimony about the limiting effect of her symptoms was "not entirely credible." *Id.* Finally, the district court concluded that the medical evidence in the record cited by the "ALJ provided good reasons, supported by substantial evidence, for assigning little weight" to Dr. Tanir's opinion. *Id.* at *5–7. This appeal followed.

Shepard alleges that the ALJ's decision erred in four respects: (i) the ALJ failed to properly apply Social Security Ruling 03-2p ("SSR 03-2p"), which describes the process for evaluating cases involving RSD, when determining the effect of RSD on Shepard's ability to work; (ii) the ALJ lacked substantial evidence for discounting Dr. Tanir's opinion about Shepard's ability to perform "light" or "sedentary work;" (iii) the ALJ's determination that Shepard's statements concerning the limiting effects of her symptoms were "not entirely

credible" is not based on substantial evidence; and (iv) the ALJ's RFC determination is not supported by substantial evidence. None of these contentions warrants reversal.

First, the ALJ properly applied the sequential evaluation process required by SSR 03-2p to determine the effect of Shepard's RSD on her ability to work. *See* SSR 03-2p, 2003 WL 22399117, at * 6 (S.S.A., Oct. 20, 2003). While Shepard is correct that the ALJ's decision does not explicitly cite SSR 03-2p, the decision clearly comports with the five-step sequential evaluation process for RSD claims prescribed by the ruling. The sequential evaluation process is not particular to RSD claims; rather, "[c]laims in which the individual alleges RSDS/CRPS are adjudicated using the sequential process, *just as for any other impairment*." SSR 03-2p, 2003 WL 22399117, at *6 (emphasis added). First, ALJ Holmes concluded that the "record establishes that the claimant has reflex sympathetic dystrophy," after considering "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." Next, the ALJ determined that Shepard's impairment was severe because it had "more than a minimal effect on the claimant's ability to perform basic work-related tasks." At step three, the ALJ determined that record evidence of Shepard's "activities of daily living," "social functioning," "concentration, persistence or pace," and "episodes of decompensation" demonstrated that her impairment was not equal in severity to any of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1.

Shepard does not dispute these findings or argue that the ALJ failed to conduct these steps under SSR 03-2p properly. Instead, Shepard argues that, because the ALJ did not explicitly cite SSR 03-2p when assessing her RFC, there is not substantial evidence that the ALJ was aware of the unique characteristics of RSD or the Administration's policy for evaluating RSD claims. But once a diagnosis of RSD is found, the determination of whether someone is disabled

continues the same way it does "for any other impairment." SSR 03-2p, 2003 WL 22399117, at *6; *Combs v. Astrue*, 243 F. App'x 200, 205 (8th Cir. 2007). Indeed, SSR 03-2p's guidance on assessing a claimant's RFC mirrors the guidance provided by social security rulings for other medical disorders. *Compare, e.g.*, SSR 03-2p, 2003 WL 22399117, at *6 *with* SSR 12-2P, 2012 WL 3104869, at *6 (S.S.A. July 25, 2012) (both instructing adjudicators to evaluate RFC under SSR 96-8p). The ALJ adhered to SSR 03-2p's directives to "evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work," and consider "all of the individual's symptoms . . . in deciding how such symptoms may affect functional capacities." SSR 03-2p, 2003 WL 22399117, at *6–7. Explicitly citing SSR 03-2p would not have substantively changed the ALJ's analysis, and the fact that her inquiry actually comported with the directives of SSR 03-2p is evidence that she was aware of the administration's policy for evaluating RSD claims and applied that policy.

It is also apparent that the ALJ was aware of the unique characteristics of RSD and weighed those characteristics in determining Shepard's limitations. As discussed above, the ALJ's review of objective medical evidence, including "all symptoms," led the ALJ to conclude that Shepard's RSD was a severe impairment. The ALJ could not have concluded that Shepard suffered from RSD and that her impairment was severe without being aware of the symptoms and character of the syndrome. Rather, the ALJ's decision devoted a great deal of discussion to the medical evidence associated with Shepard's RSD, observing common symptoms and characteristics such as spontaneous pain and concerns about RSD "spread[ing] to other limbs, or to remote parts of the body," SSR 03-2p, 2003 WL 22399117, at *1-2. Thus, the ALJ's decision thoroughly considered RSD at each relevant stage of her analysis. This is in stark contrast to the

case cited by Shepard, *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825 (6th Cir. 2016), where we found that the ALJ's failure to discuss the claimant's obesity past step two and his reliance on a non-examining physician's opinion "cast[] additional doubt upon whether there [was] substantial evidence" to support the ALJ's decision. *Id.* at 835. The structure and analysis in the ALJ's decision demonstrate that she considered Shepard's RSD claim in conformance with SSR 03-2p.

Second, although Dr. Tanir was Shepard's treating physician, the ALJ had good reasons to discount his opinion because the conclusory opinion was rendered more than seven years after the relevant period and it was inconsistent with substantial objective medical evidence in the record. A treating physician's opinion is typically afforded controlling weight under the treating physician doctrine, but the ALJ is permitted to discount the weight given to a treating source's opinion if the ALJ "provide[s] 'good reasons' . . . 'supported by the evidence in the case record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citations omitted). Here, the record demonstrates several instances in which Dr. Tanir's medical records do not support the severity of the doctor's opinion. Dr. Tanir noted, for example, normal gait and sufficient pain control with medication. Moreover, the ALJ cited treatment notes that often described Shepard's upper and lower extremities as normal with occasional tenderness to the knee. Adjudicators must consider whether a medical opinion is supported by the record and whether the opinion is consistent with the record as a whole. 20 CFR § 404.1527(c)(3), (4). The treatment notes from Dr. Tanir in the record cited by the ALJ demonstrate that Dr. Tanir's opinion could be denied controlling weight by the ALJ.

The fact that there is some evidence in the medical records to support Dr. Tanir's conclusion is not enough to overturn the agency. "The fact that a record may also possess substantial evidence to support a different conclusion than that reached by the ALJ or that a

reviewing judge might have decided the case differently is irrelevant." *Crisp v. Sec'y of Health and Human Servs.*, 790 F.2d 450, 452 n. 4 (6th Cir. 1986). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion." *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Instead, our review is "limited to determining whether [the Commissioner's decision] is supported by substantial evidence and was made pursuant to proper legal standards." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (citations omitted). In this case, the medical evidence in the record cited by the ALJ demonstrates that there was substantial evidence to find that Dr. Tanir's opinion was inconsistent with the case record.

Dr. Tanir's evaluation was also completed more than seven years after Shepard's last insured date. Shepard argues that the ALJ failed to observe that each page of Dr. Tanir's evaluation states that its responses relate to Shepard's "Condition On Or Before June 30, 2007." But the ALJ's decision never questioned whether Dr. Tanir's evaluation related to the relevant period. Instead, the ALJ considered whether the retrospective evaluation, seven years after the fact, was reliable given that the "medical records from Dr. Tanir . . . provide little information or support for allegations of disab[ility]." The ALJ's concern is reasonable in light of Dr. Tanir's conclusory opinion, which provided no supporting findings or records and consisted largely of one word answers, circles, and check-marks. Such opinions have been characterized as "weak evidence at best" that meets the "patently deficient standard." *Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 475 (6th Cir. 2016) (quoting *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d. Cir. 1993)). This is not to say that retrospective evaluations are inherently unreliable or that the record is devoid of evidence of Shepard's impairment. But the medical record evidence cited by the ALJ and the threadbare nature of Dr. Tanir's evaluation seven years after Shepard's last

insured date demonstrate substantial evidence that the ALJ has good reason to discount Dr. Tanir's opinion.

Third, the ALJ's determination that Shepard's statements concerning the "intensity, persistence and limiting effects of [her] symptoms are not entirely credible" is supported by substantial evidence. The ALJ observed that the medical evidence in the record indicated that "claimant's treatment has been relatively conservative in nature," and "[h]er treatment has generally consisted of pain medications, which have been relatively effective in controlling her symptoms." While Shepard alleges that the ALJ "selectively cited from the evidence of record" and "relied on three isolated treatment notes," the decision actually demonstrates a thorough engagement with relevant evidence in the record. In disability cases, "the relevant time period runs from [the claimant's] alleged onset date to h[er] date last insured," and the ALJ relied on the medical records near in time to the relevant period here: June 1, 2007 to June 30, 2007. *Watters v. Comm'r of Soc. Sec.*, 530 F. App'x 419, 421 (6th Cir. 2013). Physical exams and objective testing in May and September of 2007 demonstrated mild shoulder weakness, mild lumbar tenderness, and mild underlying sensory peripheral neuropathy. The ALJ also observed that a physical exam from July 2007 showed that Shepard had full range of motion in her lumbar spine and good strength in her upper extremities, notwithstanding the presence of a positive bilateral Tinel's signs. Much of the counter-evidence that Shepard points to is either well after the relevant inquiry period or relies on the very subjective statements that the ALJ discredited.

The ALJ also considered statements in Shepard's Function Report that were inconsistent with testimony about a "limited lifestyle." Shepard indicated that she engaged in a variety of activities including driving, preparing simple meals, light household cleaning, and doing laundry

with assistance carrying the basket up and down the stairs. Indeed, Shepard told her physician that she was performing her own housework and was even working in May and July of 2007.

Shepard argues that it was an error for the ALJ to rely on the daily activities described in her Function Report because "[n]one of these activities demonstrates the ability to perform light work." But Shepard's argument misunderstands the ALJ's decision. The ALJ cited these activities as evidence that Shepard's testimony about the severity of her symptoms and her limited lifestyle was "not entirely credible," not to demonstrate that she was capable of light work. It was entirely appropriate for the ALJ to consider whether Shepard's asserted limitations were consistent with her ability to drive, prepare simple meals, shop, and go to eat or the movies. *See* 20 CFR § 404.1529. Such activity may be considered in making a credibility determination regarding a claimant's asserted limitations. *See, e.g.*, *Sorrell v. Comm'r of Soc. Sec.*, 656 Fed. App'x. 162, 174 (6th Cir. 2016) (citing *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 543–44 (6th Cir. 2007) and *Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990)). "An ALJ's credibility assessment must be accorded great weight and deference." *Workman v. Comm'r of Soc. Sec.*, 105 F. App'x 794, 801 (6th Cir. 2004). "We have held that an administrative law judge's credibility findings are virtually unchallengeable" absent compelling reasons. *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013) (citation omitted). Such reasons are not present here.

Finally, substantial evidence supports the ALJ's determination that, "through the date last insured, [Shepard] had the residual functional capacity to perform light work" with certain restrictions. The ALJ's findings are supported by evidence that Shepard's treatment during the relevant period was relatively conservative, generally consisting of pain medications, and that this treatment was generally effective. Between May and July of 2007, Shepard reported

significant improvement in her pain levels with medication, and in June of 2007 she reported to her physician that her pain relief was adequate. As discussed above, physical exams and objective medical testing in the record demonstrated only mild abnormalities near in time to the relevant period. Moreover, immediately before the relevant period Shepard had "full[y] active abduction and forward flexion and internal rotation was equal bilaterally."

Shepard contends that there is conflicting evidence in the record that demonstrates she was incapable of light work during the relevant period. That may be so, but when the ALJ is "presented with the not uncommon situation of conflicting medical evidence[,] [t]he trier of fact has the duty to resolve that conflict." *Richardson v. Perales*, 402 U.S. 389, 399 (1971). Our job is only to ensure that the Commissioner's determination is supported by substantial evidence. *See Rogers*, 486 F.3d at 241. Moreover, the conflicting evidence that Shepard cites supports the ALJ's decision to include limitations on Shepard's ability to perform light work, including a sit/stand at will option and limitations on her ability to handle, finger, and feel bilaterally with the upper extremities. The RFC's limitations are further supported by Shepard's testimony and opinion evidence in the record. All of these considerations are consistent with the Commissioner's guidelines for assessing a claimant's residual functional capacity. *See* SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996).

Shepard also argues that the ALJ's RFC lacks substantial evidence because no physician opined that Shepard was capable of light work. But "the *ALJ* is charged with the responsibility of determining the RFC based on *her* evaluation of the medical and non-medical evidence." *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013) (emphasis added). An RFC is an "administrative finding," and the final responsibility for determining an individual's RFC is reserved to the Commissioner. SSR 96-5p, 1996 WL 374183, at * 1–2 (July, 2, 1996). "[T]o

require the ALJ to base her RFC on a physician's opinion, would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability." *Rudd*, 531 F. App'x at 728.

The judgment of the district court is affirmed.