NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0223n.06

Case No. 20-1797

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**

Apr 26, 2021
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| JUDITH ELLEN HIZER, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| COMMISSIONER OF SOCIAL SECURITY, | ) | DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellee. | ) | |
| _____ | ) | OPINION |

**BEFORE: COLE, Chief Judge; MOORE and GILMAN, Circuit Judges**

**RONALD L. GILMAN, Circuit Judge.** Judith Ellen Hizer appeals the district court's

decision to affirm the Commissioner of Social Security's denial of her claims for disability

benefits. She alleges that the administrative law judge (ALJ) mischaracterized her disabilities as

well as her Residual Functional Capacity, that he failed to adhere to the proper standard of proof,

and that his findings are not supported by substantial evidence.

Hizer's arguments are unpersuasive. First, her characterization of the ALJ's reasoning is

unsupported by an independent review of the record. Second, because Hizer failed to object to the

magistrate judge's Report and Recommendation, she failed to preserve her right to appeal from

the district court's adoption of the same. We therefore **AFFIRM** the judgment of the district court.

## I. BACKGROUND

Hizer applied for disability insurance benefits under Title II of the Social Security Act (the

Act) in 2013, and for supplemental security income under Title XVI of the Act in 2015. Her 2013

disability application alleged that she has been disabled since 2011 because of several conditions, including fibromyalgia, arthritis, multiple chemical sensitivities, asthma, tinnitus, endocrine disorder (including hypothyroidism), fatigue, and depression.

After her claims were denied initially and on a request for reconsideration, she sought a hearing before an ALJ. The ALJ denied Hizer's Title II application in early 2015. After a second hearing was held—involving both the Title II and the Title XVI applications—a different ALJ again denied Hizer's claims in a decision dated May 3, 2017. In January 2018, Hizer had a third administrative hearing before the same ALJ who conducted her second hearing, during which he heard further testimony from Hizer as well as from a vocational expert before issuing a decision dated March 9, 2018. The magistrate judge's summary of the factual background and procedural history, which is largely uncontested by either party, contains a more thorough description of the pertinent background.

After outlining the conditions that Hizer suffers from—which include (1) respiratory disorder, (2) spinal disorder, (3) bilateral knee disorder, (4) hip disorder, (5) immunodeficiency disorder, (6) Sjogren's syndrome (a multifaceted disorder that involves several bodily functions), and (7) fibromyalgia—the ALJ determined that, when considered alone or together with other impairments, they failed to satisfy the requirements of 20 C.F.R., Part 404, Subpart P, Appendix 1. The ALJ next detailed Hizer's Residual Functional Capacity (RFC), concluding that Hizer could perform light work comporting with the following limitations:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work . . . except that the claimant is never to climb ladders, ropes, or scaffolds; the claimant is limited to no more than occasional climbing of ramps and stairs, balancing, stooping, crouching, kneeling, and crawling; the claimant must avoid all exposure to moving mechanical parts, unprotected heights[]; the claimant must avoid more than occasional exposure to irritants such as fumes, odors, dusts, gases, and poorly

ventilated areas; [and] the claimant must avoid all exposure to extreme temperatures of cold or heat.

(Cleaned up.)

The ALJ found that Hizer was not entitled to benefits. He concluded that Hizer remained able to "perform her past . . . work as coordinator and editor of publication," and referenced the vocational expert's testimony that an individual with Hizer's RFC could perform the requirements of representative operations such as data-entry clerk, inspector-hand packager, and electrical-accessory assembler, which represent 165,000, 48,600, and 42,000 national jobs, respectively.

## II. ANALYSIS

### A. Standard of review and applicable law

"We review de novo a district court's decision concerning a social security benefit determination." *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014). Although we, like the district court, can examine portions of the record that were not evaluated by the ALJ, *Walker v. Sec. of Health & Hum. Servs.*, 884 F.2d 241, 245 (6th Cir. 1989), our role is a limited one. Judicial review is constrained to deciding whether the ALJ applied the proper legal standards in making his or her decision, and whether the record contains substantial evidence supporting that decision. *Tucker v. Comm'r of Soc. Sec.*, 775 F. App'x 220, 224–25 (6th Cir. 2019)); *see also Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007) (noting that courts should not retry the case, resolve conflicts of evidence, or make credibility determinations); *Biestek v. Comm'r of Soc. Sec.*, 880 F.3d 778, 783 (6th Cir. 2017) (same).

An ALJ's factual findings must be supported by "substantial evidence." 42 U.S.C. § 405(g). The Supreme Court has recently explained what that term means:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts,

the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted).

In making "substantial evidence" the relevant standard, the law preserves the judiciary's ability to review decisions by administrative agencies, but it does not grant courts the right to review the evidence *de novo*. *Moruzzi v. Comm'r of Soc. Sec.*, 759 F. App'x 396, 402 (6th Cir. 2018) ("The substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts.") (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009)). An ALJ's factual findings are therefore subject to multi-tiered review, but those findings are conclusive unless the record lacks sufficient evidence to support them. *Biestek*, 139 S. Ct. at 1154.

**B. Assuming for the sake of argument that Hizer preserved her right to appeal, the ALJ's decision was sound, and the minor factual errors by the district court that Hizer references in her brief are insufficient for reversal**

Hizer alleges that the ALJ did not properly weigh the medical-expert testimony and, relatedly, that the ALJ did not properly develop the record. She asserts that "[o]n its face, the ALJ's decision fails to meet" the "minimum requirements" set out by the Social Security Administration. She specifically alleges that the ALJ's written decision did not give "rational and logical reasons for the decision," and that it was not "based on the preponderance of the evidence offered at the hearing or otherwise included in the record." In response, the Commissioner notes that Hizer's appellate brief contains "a near-verbatim recitation of her district court contentions and are essentially a request for an impermissible re-weighing of the record."

After reviewing the briefs, the lengthy administrative record, and the district court's decision, we conclude that the ALJ's decision was sound. Hizer correctly notes that the ALJ and

the district court made several factual errors. She is also right in observing that conflicting evidence exists in the record. But because substantial evidence supports the ALJ's decision regarding both Hizer's impairments and her RFC, and because the ALJ properly developed the record, we have no basis to overturn the ALJ's decision.

1. ***Substantial evidence supported the ALJ's determination, and the ALJ gave a reasoned basis for weighing some medical testimony over other medical testimony***

An ALJ must give controlling weight to the view of a physician or other treating source if (1) "the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques,'" and (2) "the opinion 'is not inconsistent with the other substantial evidence in [the] . . . record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527(c)(2)). But the ALJ need not defer to opinions by medical professionals (or other treating sources) that are not based on adequate medical data. *Cohen v. Sec. of Health & Hum. Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) ("The ALJ . . . is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation.").

Hizer argues that the ALJ did not properly weigh her treating physicians' opinions. The crux of her argument is that the ALJ should have given more weight to the testimonial or documentary evidence from some of the treating physicians than from others. As set forth in her brief:

> [W]hile the decision of whether a claimant is disabled is up to the Commissioner and not to physician opinion, the Commissioner erroneously afforded "little weight" to medical source statements of treating physicians Harris, Morris, and Kazmierzazk . . . .

A close review of the ALJ's decision and of the rest of the record, however, convinces us that he did not improperly discount the relevant medical evidence. Although the ALJ did give

some evidence less weight than other evidence, he provided reasons when doing so that are not inconsistent with the administrative record. His findings that certain medical conditions were unsupported by objective evidence are—as the district court found and as the Commissioner argues—consistent with the objective medical evidence. In addition to corroborating the Commissioner's statement that "the record was without the objective diagnostic or laboratory testing required to find [multiple chemical sensitivity syndrome] medically determinable," our independent review found several other instances where laboratory reports and diagnostic tests failed to corroborate Hizer's subjective complaints. Such evidence includes a brain study finding "no compelling evidence" of MS, as well as "[l]aboratory evaluation[s] [that] included normal baseline tryptase levels," which were "on multiple occasions less than 2ng/mL," and indicated that Hizer did "not meet the criteria for mast activation syndrome[,] as there is no documentation of elevated mast cell mediator levels[,]" adding that a "24-hour urine [sample] . . . w[as] normal."

Hizer is correct in pointing out that an ALJ cannot create medical evidence. But the ALJ may evaluate the evidence and give more weight to some medical testimony than to other medical testimony. *See, e.g.*, *Richardson v. Perales*, 402 U.S. 389, 399 (1971) (holding that, when "presented with the not uncommon situation of conflicting medical evidence[,] . . . [t]he trier of fact has the duty to resolve that conflict").

We agree with the district court's conclusion that the ALJ did not improperly weigh or ignore testimony in evaluating the 1,300 pages of medical evidence in this case. The record also supports the district court's conclusion that the ALJ's decision to discount certain testimonial evidence was not discriminatory or biased. For example, the ALJ was fully justified in discounting the testimony from Dr. Amanda Morris to the effect that Hizer's multiple chemical sensitivity syndrome was of such severity as to prevent her from leaving her home because the record included

several instances of Hizer in fact leaving her home. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) (noting that an ALJ is permitted by the regulations to assign different weights to testimony on the basis of criteria including consistency, supportability, and the presence or lack thereof of contradictory evidence in the record) (citing 20 C.F.R. § 404.1527(d)(1)-(6)).

### 2. *The district court's factual errors were minor and legally immaterial*

Hizer correctly points out several factual errors that the magistrate judge made in his analysis of the medical record, but all are without legal significance. For example, the magistrate judge wrote that Hizer was seen by Dr. Pareigis only once instead of twice. But that factual error does not mean, as argued by Hizer, that Dr. Pareigis's RFC "should have been the one relied upon by the Commissioner." In fact, notwithstanding that error, the magistrate judge correctly identified several portions of the record that contain substantial evidence of findings consistent with the ALJ's RFC assessment. The district court therefore accomplished its job, which "is only to ensure that the Commissioner's determination is supported by substantial evidence." *Shephard v. Comm'r of Soc. Sec.*, 705 F. App'x 435, 442 (6th Cir. 2017) (citing *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241) (6th Cir. 2007)).

### 3. *The district court correctly found that the ALJ properly developed the medical record*

A claimant such as Hizer is responsible for providing the necessary evidence to establish an entitlement to disability benefits. 20 C.F.R. §§ 404.1512, 404.1514; *Bowen v. Yuckert*, 482 U.S. 137, 145 (1987) (holding that "disability claimants" are responsible for making "a threshold showing that their 'medically determinable' impairments are severe enough to satisfy the regulatory standards"). We agree with the district court's conclusion that the ALJ sufficiently developed the medical record. Even on appeal, Hizer does not so much provide evidence that the

ALJ selectively neglected certain evidence, but instead argues that the ALJ should have weighed the evidence differently. Such is not a basis for relief.

Nor does Hizer explain how the ALJ could have further developed a medical record that was already 1,300 pages in length. Although Hizer suggests that the record could have been further developed regarding certain conditions—for example, pain and respiratory difficulties—the fact remains that an ALJ does not typically have a heightened duty to develop the record. Rare cases have occurred where the claimant was not represented by counsel and the ALJ's failure to assume a more active role resulted in a record containing insufficient evidence to fairly assess the claimant's RFC or to otherwise resolve her claims. *See, e.g.*, *Lashley v. Sec. of Health & Hum. Servs.*, 708 F.2d 1048, 1051–52 (6th Cir. 1983) (citing similar cases). But Hizer was represented by counsel and the record here is not deficient.

**C. Because Hizer did not object to the magistrate judge's Report and Recommendation, she failed to preserve her right to appeal alleged errors, and no exception applies**

Hizer faces another major problem with her appeal in this case—she failed to object to the magistrate judge's Report and Recommendation. This is generally fatal to an appeal. *See McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 837 (6th Cir. 2006) ("This court cannot entertain an objection to a magistrate judge's report and recommendation that was not previously raised."). Hizer's Reply Brief acknowledges that "objections should have been filed to the Magistrate's Report and Recommendation, although counsel during the relevant time period understood that no further appeal would be made." In asking us to excuse this omission in "the interest of justice," Hizer proffers two reasons why we should excuse her failure to object.

Her first reason is that "plain error, substantial legal error, occurred at the hearing level in the ALJ's Decision." We have already explained, however, that the existence of conflicting evidence is not a reason for reversal; that substantial evidence existed in the record; and that, when

the ALJ gave some evidence less weight than other evidence, he did so on the basis of permissible rationales supported by the caselaw, including vagueness or a lack of consistency with the record.

The second reason that Hizer suggests we should consider the merits is that Hizer "is destitute, as confirmed by her sworn financial affidavit in support of her Motion For Permission to Appeal In Forma Pauperis." But she cites no caselaw to suggest that destitution alone allows us to consider the merits. One of the cases that she cites notes that the "interest of justice" standard allows the grant of a new trial where a substantial legal error has occurred, *United States v. Munoz*, 605 F.3d 359, 373 (6th Cir. 2010), but *Munoz* says nothing about destitution alone. Finally, Hizer does not explain why—if her economic situation is indeed dire—she did not initially plan to appeal, which is the only reason that counsel has given us for his failure to timely object to the magistrate judge's Report and Recommendation.

### III. CONCLUSION

We have sympathy for Hizer, but we cannot overturn an ALJ's decision where it is supported by substantial evidence and legally correct. *Mokbel-Aljahmi v. Comm'r of Soc. Sec.*, 732 F. App'x 395, 400 (6th Cir 2018) ("[O]n review . . . we decide only whether there was substantial evidence to support the ALJ's decision. If so, we defer to that decision, even in the face of substantial evidence supporting the opposite conclusion."). Overturning the ALJ's decision would be especially improper where, as here, the claimant failed to preserve her right to appeal. For all of the foregoing reasons, we **AFFIRM** the judgment of the district court.